UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | 25-CR-282 (SLS) |
| **ENJOLI GAFFNEY** | : | |

**MOTION TO DISMISS INDICTMENT**

The United States Attorney's Office has played a shell game between the Superior Court of the District of Columbia and this Court to avoid the D.C. Code's 100-day limitation on pretrial detention while thwarting the federal Speedy Trial Act's time requirements for the return of indictments and trials. The Indictment, ECF 1, demonstrates no federal interest in prosecuting this matter, but rather charges D.C. Code firearm offenses and adds a federal ammunition charge based on ammunition found in the firearm. While the government has not disclose its motivation for moving this case to federal court, the effect of the government's decision to move this case from Superior Court to this court is to continue Mr. Gaffney's pretrial detention while delaying the inevitable finding that Mr. Gaffney was unlawfully seized and searched in violation of the Fourth Amendment. *See* Motion to Suppress Tangible Evidence, ECF 11. As a sanction for the government's manipulation of the system to thwart Mr. Gaffney's right to due process, the Court should dismiss this matter with prejudice.

**Background**

On June 25, 2025, just after midnight, four police officers approached Mr. Gaffney and several other men who were sitting and talking in the 1600 block of Lincoln Road, N.E. Police claim that some of the men had open containers of alcohol, but police body-worn camera (BWC) videos demonstrate that only one man, not Mr. Gaffney, had a beer can and that can was not

visible until after police surrounded the men. Mr. Gaffney did not have an open container, and the officer who testified at a preliminary hearing in Superior Court confirmed this. Police had no reason to stop and search Mr. Gaffney. Nonetheless, police surrounded him, pointed their flashlights in his face, and compelled him to reveal his waistband and remove items from his pocket. The police now claim they saw Mr. Gaffney pushing a plastic bag in his pocket, but the BWC camera footage confirms that they did not see the plastic until after Mr. Gaffney was seized and searched. Moreover, the plastic alone did not give officers a basis to search him. After unlawfully seizing and searching Mr. Gaffney, the officers placed him under arrest for possession of a narcotic and searched him again. According to the officers, they then found him in possession of a firearm.

Later that day, police took Mr. Gaffney to Superior Court, and the government charged him with unlawful possession of a firearm (prior conviction), in violation of D.C. Code § 22-4503, carrying a pistol without a license (outside home or place of business), in violation of D.C. Code § 22-4504(a)(1), and possession of a prohibited weapon (felony), in violation of D.C. Code § 22-4514(a)(c)(1). The Court appointed counsel for Mr. Gaffney and on June 27, 2025, held a preliminary hearing and a hearing on the government's request for pretrial detention. The court found probable cause and ordered Mr. Gaffney detained. Consistent with D.C. law, because Mr. Gaffney was detained, the court set Mr. Gaffney's trial to begin within 100 days of his detention, on October 2, 2025. *See* D.C. Code § 23-1322(h)(1) ("The case of the person detained pursuant to subsection (b) of this section shall be placed on an expedited calendar and, consistent with the sound administration of justice, the person shall be indicted before the expiration of 90 days, and shall have trial of the case commence before the expiration of 100 days.").

On September 12, 2025, Mr. Gaffney's counsel filed a motion to suppress based on the Fourth Amendment violations, and on that same date, just 20 days before Mr. Gaffney's motions hearing and trial was scheduled to begin, the government sought and obtained a federal indictment charging two of the same D.C. Code offenses: unlawful possession of a firearm (prior conviction), in violation of D.C. Code § 22-4503, and possession of a prohibited weapon (felony), in violation of D.C. Code § 22-4514(a)(c)(1). The Indictment does not charged possession of the firearm under federal law, but to obtain jurisdiction in this Court, the government charged unlawful possession of ammunition by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g). The timing of the federal indictment and the charged offenses demonstrate that the government either does not believe the firearm at issue is unlawful under federal law or believes that it does not warrant a federal charge, and the only purpose of moving the charges to federal court was to thwart Mr. Gaffney's right to a trial within 100 days of detention—and delay a ruling on the motion to suppress.

This is not the only recent case in which the government used its discretion to manipulate the timing of cases between this Court and Superior Court. *See*, *e.g.*, *Jeffrey Britt,* 25-cr-258 (JMC) (defendant arrested and detained in Superior Court on June 28, 2025; trial set for October 9, 2025; federal indictment returned August 29, 2025); *United States v. Kevin Hopkins*, 25-cr-118 (JMC) (defendant arrested and detained in Superior Court on November 20, 2024; trial set in Superior Court for May 5, 2025; federal indictment returned on April 24, 2025); *Damarqus Moore*, 25-cr-115 (SLS) (defendant arrested and charged in Superior Court on January 13, 2025; motions hearing set in Superior Court for August 15, 2025; federal indictment returned April 23, 2025). *Cf. United States v. Mark Anthony Fletcher, et al.*, 25-cr-150 (TNM) (defendants arrested

and detained in Superior Court on July 3, 2021; because of number of defendants and schedules, trial set for January 2025; one of three defendants moved to continue that trial date and it was continued to December 2025; the government responded to the continuance by moving charges to federal court citing an intent to move faster); *United States v. Dremale Vanterpoole*, 25-cr-138 (RJL) (government moved case to this Court after defendant released in Superior Court as a sanction for discovery violations that delayed trial, while a motion to dismiss based on government misconduct was pending in Superior Court).[1]

## Argument

I. **THE GOVERNMENT'S DECISION TO MOVE CHARGES TO FEDERAL COURT VIOLATED MR. GAFFNEY'S CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL, THWARTED THE SPEEDY TRIAL ACT, AND VIOLATED DUE PROCESS**

The Sixth Amendment to the United States Constitution guarantees every criminal defendant the right to a speedy trial. The government has an "affirmative constitutional obligation to try the defendant in a timely manner," and "must pursue the defendant with reasonable diligence from his indictment to his arrest." *United States v. Fernandes*, 618 F. Supp. 2d 62, 68 (D.D.C. 2009) (internal quotation marks omitted) (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992); *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997)). When a pretrial delay occurs, the burden is on the government to explain the delay. *Id.*

The Supreme Court has identified four factors for courts to consider when determining whether the government has violated a defendant's Sixth Amendment right to a speedy trial: "Length of the delay, the reason for the delay, the defendant's assertion of his right, and

---

[1] After an indictment was returned in federal court, the Superior Court dismissed the indictment there *with prejudice*. A motion to dismiss the indictment based on what occurred in Superior Court is now pending before Judge Leon.

4

prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 538, 530 (1972); *see also Doggett v. United States*, 505 U.S. 647, 651 (1992) (relevant questions are: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for the delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result").

An assessment of these factors in this case demonstrates that the government failed to provide Mr. Gaffney with a speedy trial as the Constitution requires. First, while the full length of the delay is not yet clear because the process must now restart, there is no doubt that the trial is delayed beyond the date scheduled in Superior Court, October 2. The length of the delay also should be considered in the context of the case. This is not a complex case. The stop and search of Mr. Gaffney is on BWC video and the government's evidence will consist of the testimony of several police officers.

The second factor also supports dismissal. The delay is attributable solely to the government. Mr. Gaffney and his counsel were prepared to move forward with this matter on October 2 in Superior Court. Mr. Gaffney has not sought any delay. Similarly, the third factor— defendant's assertion of the right to a speedy trial—does not weigh in favor of the government. Mr. Gaffney did not waive his right to a speedy trial in Superior Court. Instead, he sought to have the trial within the time limits of the Superior Court Rules. Finally, the fourth factor, prejudice to the defense, weighs heavily against the government. As the *Doggett* Court recognized, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify," and "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. 654, 656. Here, delay has a very real consequence—pretrial detention.

5

The government's decision here also thwarted Mr. Gaffney's statutory rights under the Speedy Trial Act (STA), 18 U.S.C. § 3161, *et seq*. The STA requires the government to obtain an indictment within 30 days of an arrest and to begin trial within 70 days of arraignment. *See* 18 U.S.C. § 3161(b) & (c). The STA also limits the time for pretrial detention. *See* 18 U.S.C. § 3164. The trial of a defendant who is detained must begin within 90 days of detention. *Id.* If the government had brought the charges before this Court on the date of Mr. Gaffney's arrest, the STA would have required an indictment no later than July 25, 2025 (30 days from arrest) and a trial no later than October 3, 2035 (70 days from the last date the indictment could be returned), and Mr. Gaffney could be detained without trial no longer than September 22, 2025 (the 90th day of pretrial detention). Under the D.C. Code bail statute, a person can be detained pretrial for no more than 100 days. *See* D.C. Code § 23-1322(h)(1) ("The case of the person detained pursuant to subsection (b) of this section shall be placed on an expedited calendar and, consistent with the sound administration of justice, the person shall be indicted before the expiration of 90 days, and shall have trial of the case commence before the expiration of 100 days."). The 100th day of Mr. Gaffney's detention is October 2, 2025. By filing this case first in Superior Court, then moving the case to district court, the government avoided all of these requirements.

As the government noted at the September 23rd hearing in this matter, the D.C. Circuit has held that the STA time requirements are not triggered until federal charges are filed. *See Untied States v Knight*, 824 F.3d 1105 (D.C. Cir. 2016); *United States v. Mills*, 964 F.2d 1186 (D.C. Cir. 1992). In both *Mills* and *Knight*, however, the D.C. Circuit recognized that a due process violation could occur if the government acts deliberately. As the *Knight* court explained:

> [The defendants] also urge this Court to recognize a "ruse" exception to the Speedy Trial Act for situations where the Government arrests someone on D.C. Code charges with the intent to bring later federal charges after the Speedy Trial Act clock

6

> otherwise would have expired. But the Court has previously declined to create such an exception to the Act. In *United States v. Mills*, the defendants were arrested for violations of the D.C. Code. More than 30 days later, the Government obtained a federal indictment based on the same conduct. *Mills*, 964 F.2d at 1188. The *Mills* defendants advanced the same argument that Knight and Thorpe do here—namely, that without a ruse exception, the Government will be able to ''park'' defendants in D.C. Superior Court to avoid the Speedy Trial Act's 30-day clock. *See id*. at 1192. But the Mills Court declined to adopt a ruse exception under the Speedy Trial Act.
>
> Although the *Mills* Court declined to create such an exception under the Act, the Court recognized that a due process problem may arise when the Government parks a defendant in D.C. Superior Court to avoid the Speedy Trial Act. The Court stated: ''If a defendant showed that the U.S. Attorney deliberately arrested him on D.C. charges and secured a Superior Court indictment in order to gain time to gather additional evidence for a federal prosecution, he might have a valid due process claim for pre-indictment delay.'' *Id*.

*Knight*, 824 F.3d at 1110.

Here, the facts support a finding that the government did act deliberately to avoid both the STA time requirements and the Superior Court pretrial detention limitations. The Indictment supports a finding that there was no federal interest served by bringing the charges in federal court because the indictment charges the firearm only under the D.C. Code. The Indictment charges only the ammunition violation under federal law to obtain jurisdiction here. There is only one possible explanation for the government's decision to seek to enforce D.C. law in this courthouse: the government wants to continue Mr. Gaffney's pretrial detention while delaying addressing the merits of his case. The reason for this too is clear, the Fourth Amendment violations are recorded on the BWC videos and undeniable. *See* ECF 11. This deliberate effort to avoid the requirements of the STA and the Superior Court 100-day requirement warrants dismissal.

II. **THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE DECISION TO BRING CHARGES IN FEDERAL COURT CONSTITUTES VINDICTIVE PROSECUTION**

The phrase "'prosecutorial vindictiveness' . . . refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (affirming dismissals on grounds of prosecutorial vindictiveness) *(citing United States v. Goodwin*, 457 U.S. 368, 372 (1982)). "In other words, a prosecutorial action is 'vindictive' only if designed to penalize a defendant for invoking legally protected rights." *Meyer*, 810 F.2d at 1245. As the D.C. Circuit has explained:

> The Supreme Court has established two ways in which a defendant may demonstrate prosecutorial vindictiveness. First, a defendant may show "actual vindictiveness" – that is, he may prove through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights. *See* [*Goodwin*, 457 U.S.] at 380-81, 384 & n.19 . . . . This showing is, of course, exceedingly difficult to make. Second, a defendant may in certain circumstances rely on a presumption of vindictiveness: when the facts indicate "a realistic likelihood of 'vindictiveness[,]'" a presumption will arise obliging the government to come forward with objective evidence justifying the prosecutorial action. *See Blackledge v. Perry*, 417 U.S. 21, 27-29, 29 n. 7 . . . (1974). If the government produces such evidence, the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred. But if the government fails to present such evidence, the presumption stands and the court must find that the prosecutor acted vindictively.

*Id.* Although in the pretrial context the government's "decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption[,] . . . when additional facts combine with this sequence of events to create such a realistic likelihood, a presumption will lie . . . ." *Id*. at 1246. Whether a prosecution is vindictive is determined by "focus[ing] on the conduct of the government as a whole, rather than on the conduct or

8

retributive sentiments of a single prosecutor." *Id.* at 1248 (*citing Thigpen v. Roberts*, 468 U.S. 27, 31 (1984)).

In Superior Court, Mr. Gaffney sought a speedy trial and that trial was set for October 2, 2025. Prior to trial, Mr. Gaffney filed a motion to suppress evidence based on violations of his Fourth Amendment Rights. The government's response to Mr. Gaffney's exercise of his constitutional rights to a speedy trial was to bring the D.C. Code charges against him in this matter. That decision was vindictive.

As in *Meyer*, the appropriate remedy for the vindictive prosecution in this case is the dismissal of all of the pending charges with prejudice. Any other remedy would "remove the deterrent effect of the doctrine of prosecutorial vindictiveness—a doctrine which the Supreme Court *designed* to be largely prophylactic in nature." *See Meyer*, 810 F.2d at 1249 (emphasis in original) (*citing Blackledge v. Perry*, 417 U.S. 21, 26 (1974)).

### III. GOVERNMENT'S MISCONDUCT CONDUCT WARRANTS EXERCISE OF SUPERVISORY POWERS TO DISMISS CHARGES

The government's conduct here constitutes an attempt to distort the integrity of the judicial process, warranting dismissal as a "prophylactic tool for discouraging future actions of the same nature." *United States v. Houghton*, 554 F.2d 1219, 1224 (1st Cir. 1977); *See Cf. United States v. Williams*, 504 U.S. 36, 46 (1992) (supervisory power of the court can be used to dismiss indictment for grand jury misconduct that violates rules drafted by the Supreme Court and approved by Congress to ensure integrity of the grand jury).

This case was charged in Superior Court, dismissed, and recharged here. Superior Court Rule 48 is analogous to Federal Rule of Criminal Procedure 48 which permits the government to dismiss an indictment with leave of the court. *See Ferrell v. United* States, 990 A.2d 1015, 108-19 (D.C. 2010). Rule 48 "allow[s] courts to consider the 'public interest, fair administration of

criminal justice and preservation of judicial integrity'" in determining whether to grant a dismissal without prejudice. *United States v. Poindexter*, 719 F. Supp. 6, 10 n. 10 (D.D.C. 1989) (quoting *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988)); *see also United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015) (same). Requiring the government to obtain leave of court to dismiss an indictment and authorizing courts to dismiss with prejudice when appropriate prevents prosecutorial harassment by "charging, dismissing, and recharging." *Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977); *see also United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) ("The primary concern [of Rule 48(a)] . . . was that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution."). Here, the United States Attorney's Office is using its authority to prosecute local and federal charges and Superior Court Rule 48 to harass Mr. Gaffney by charging, dismissing, and recharging. That is precisely the conduct the rules are designed to prevent.

## Conclusion

For the foregoing reasons, the Court should dismiss the indictment with prejudice.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500