# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 25-cr-282 (SLS) |
| v. : | |
| : | |
| ENJOLI GAFFNEY, : | |
| : | |
| *Defendant.* : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following opposition to the Defendant's Motion to Dismiss Indictment. ECF 12.

### I.  RELEVANT BACKGROUND

As set forth in greater detail in the Government's Memorandum in Support of Pretrial Detention, ECF 6, on June 25, 2025, at approximately 12:30 a.m., Metropolitan Police Department ("MPD") Officer Nguyen encountered Enjoli Gaffney ("the Defendant") near the 1600 block of Lincoln Road Northeast in Washington, D.C. The Defendant was sitting with approximately three other people. Officer Nguyen approached the group and stated his name and badge number. He then asked if anyone in the group was "mess[ing] with firearms." The Defendant replied, "Nothing in my pocket, no firearms." Officer Nguyen responded with another question, "Nothing in your waistband?" The Defendant lifted his shirt to show police his waistband. Officer Nguyen saw a clear plastic bag protruding from the Defendant's pocket. Officer Nguyen pointed to the bag and asked, "What's this right here? Drug bag or something?" The Defendant responded, "No, that's weed." Officer Nguyen recognized "weed" to refer to marijuana.

Possession of any amount of marijuana is illegal under federal law. 21 U.S.C. § 844(a). Under District of Columbia law, possession of any amount of marijuana is illegal for people under

the age of 21[1], and possession of more than two ounces of marijuana is illegal for everyone. 48 D.C. Code § 904.01(a)(1)(A), (d)(1).

After the Defendant admitted he was violating federal law and possibly violating District of Columbia law (depending on the Defendant's age and the quantity of marijuana), MPD Officer Sibrian asked the Defendant, "Want to pull it up?" (referring to the Defendant's plastic bag). The Defendant responded, "Yeah, just weed" and removed the bag from his pocket. Police recognized the substance in the bag as cocaine and placed the Defendant under arrest.

When the Defendant admitted to possessing marijuana, at 12:24:20 a.m., there were only two officers standing with the Defendant, and no officer had given the Defendant a command or directive.

*Figure 1: Officer Sibrian's Body-Worn-Camera 12:24:20*



When Officer Nguyen observed cocaine in the Defendant's plastic bag, at 12:24:25 a.m., a third officer was standing to the Defendant's side.

---

[1] The Defendant is 46 years old.

*Figure 2: Officer Sibrian's Body-Worn-Camera 12:24:25*



Search incident to arrest, police recovered from inside the Defendant's underwear a ghost gun with a round of ammunition in the chamber and twelve rounds of ammunition in a 15-round-capacity magazine.

The Defendant has previously been convicted of Assault with a Dangerous Weapon, in case number 2018-CF3-002698, for which he was sentenced to three years of imprisonment; Assault on a Police Officer and Unlawful Possession of a Firearm (Prior Conviction), in case number 2015-CF2-011779, for which he was sentenced to 30 months of imprisonment; Unlawful Possession of a Firearm (Prior Conviction), in case number CR03-000125, for which he was sentenced to 105 months of imprisonment; and several other offenses. Therefore, on June 25, 2025, the Defendant had been convicted of a crime punishable by more than a year of imprisonment and knew he had been convicted of a crime punishable by more than a year of imprisonment.

II.  **PROCEDURAL HISTORY**

On June 25, 2025, the Defendant was charged in D.C. Superior Court case number 2025-CF2-007119, with Unlawful Possession of a Firearm (Prior Conviction), in violation of 22 D.C.

Code § 4503(a)(1); Possession of a Ghost Gun, in violation of 22 D.C. Code § 4514(a)(c)(1); and Carrying a Pistol Without a License, in violation of 22 D.C. Code § 4504(a)(1). A preliminary hearing was held on June 27, 2025. The court found probable cause and ordered the Defendant detained pending trial. On July 3, 2025, the only status hearing in the case was held, and a trial was set for October 2, 2025. A trial readiness hearing ("TRH") was scheduled for September 19, 2025. On September 12, 2025, seven days before the TRH, the Defendant filed a motion to suppress evidence. Under Superior Court Rule of Criminal Procedure 12-I(b), the Government's opposition was due fourteen days later, on September 26, 2025.

On September 12, 2025, a federal grand jury returned an indictment charging the Defendant with Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One year, in violation of 18 U.S.C. § 922(g)(1); Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation 22 D.C. Code § 4503(a)(1); and Possession of a Ghost Gun, in violation of 22 D.C. Code § 4514(a)(c)(1). ECF 1. On September 16, 2025, the Defendant's Initial Appearance was held in District Court. That same day, the Government filed a motion to dismiss in Superior Court, and the case was dismissed.[2] By that time, the Defendant had been detained in the Superior Court case pursuant to 23 D.C. Code § 1322(b) for 82 days. The Defendant was permitted to be detained for up to 90 days (September 23, 2025) pending indictment and up to 100 days (October 3, 2025) pending trial. 23 D.C. Code § 1322(h)(1). If the Defendant's trial had not commenced after 100 days, then, unless the court granted a good cause extension, *see id.*, the Defendant would have been entitled to be released pending trial. 23 D.C. Code §§ 1322(h)(3) and

---

[2] The Superior Court docket does not reflect whether the case was dismissed with prejudice or without prejudice.

1321(a). If the Defendant had been released in Superior Court, the Government would have been required to indict the case within nine months of arraignment (March 25, 2026), 23 D.C. Code § 102; the trial would have commenced some time thereafter at the discretion of the court since District of Columbia law contains no set time limit for the trial of an indicted case when a defendant is released.

In District Court, a detention hearing was scheduled for September 22, 2025. Proceedings were held on that date and continued to September 23, 2025. During the continued detention hearing proceedings on September 23, 2025, the Court raised the issue of whether there was a procedural violation resulting from the Defendant being detained in Superior Court and then subsequently indicted in District Court for the same conduct. The Court further inquired whether a remedy of dismissal with prejudice would be appropriate. Transcript Of Continued Detention Hearing 8:7-9:4, September 23, 2025. Through counsel, the Defendant indicated he wished to file a motion on this issue, and the Court set a briefing schedule, with the Defendant's motion due by September 26, 2025, and the Government's opposition due by September 30, 2025. *Id*. at 14:18-19.[3]

On September 26, 2025, the Defendant filed a Motion to Dismiss the Indictment, alleging Constitutional and statutory violations of the Defendant's speedy trial rights, ECF 12 at 4-7, and

---

[3] The Defendant also noted that he intended to file a motion to suppress evidence by September 26, 2025. *Id*. at 17:20-21. No schedule was set for motions and responses related to suppression, but the Defendant did file a Motion to Suppress Tangible Evidence, ECF 11, on September 26, 2026. Regarding suppression, the Government would respectfully request at least two weeks to respond in advance of a suppression hearing.

prosecutorial vindictiveness, ECF 12 at 8-9. The Defendant argues this Court should dismiss the indictment with prejudice. *Id.* at 9-10. For the reasons described herein, the Defendant's allegations and proposed remedy are misplaced, and the motion should be denied.

### III. ARGUMENT

#### A. The Executive Has Broad Discretion to Decide When and Whether to Institute or Dismiss Criminal Proceedings

The Attorney General and the United States Attorneys "are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const., Art. II, § 3)); *see also* 28 U.S.C. § 547(1). In particular, "[d]ecisions to initiate charges or to dismiss charges once brought 'lie[] at the core of the Executive's duty to see the faithful execution of the laws.'" *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (citation omitted). Specific to the District of Columbia, "where the facts support a violation of both local and federal law," the U.S. Attorney "enjoys free rein in deciding whether to prosecute in federal or in Superior Court." *United States v. Clark*, 8 F.3d 839, 842 (D.C. Cir. 1993); *see also United States v. Greene*, 489 F.2d 1145, 1151 (D.C. Cir. 1973) ("confided solely to [his] discretion"); *Hutcherson v. United States*, 345 F.2d 964, 967 (D.C. Cir. 1965) ("complete control"). In contrast, "few subjects are less adapted to judicial review than the exercise by the Executive of its discretion in deciding when and whether to institute criminal proceedings, or what precise charges shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967). "As a result, the presumption of regularity applies to prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Fokker*, 818 F.3d at 741 (quoting *Armstrong*, 517 U.S. at 464) (internal quotation marks omitted). These "settled principles

counsel against interpreting statutes and rules in a manner that would impinge on the Executive's constitutionally rooted primacy over criminal charging decisions." *Fokker*, 818 F.3d at 742.

### B. An Arrest for a District of Columbia Code Offense Is Not an Arrest for a Federal Criminal Offense and Therefore Does Not Trigger the Speedy Trial Act's 30-Day Clock.

Congress implemented the Defendant's right to a speedy trial, guaranteed by the Sixth Amendment, through the Speedy Trial Act, 18 U.S.C. § 3161(b), which requires the Government to secure an indictment within thirty days of a Defendant's arrest on federal charges. 18 U.S.C. § 3161(b). But it is well established that an arrest for a District of Columbia Code offense is not an arrest for a federal criminal offense and therefore does not trigger the Speedy Trial Act's 30-day clock. *United States v. Mills*, 964 F.2d 1186, 1193 (D.C. Cir. 1992); *United States v. Knight*, 824 F.3d 1105, 1109 (D.C. Cir. 2016). In *Mills*, co-defendant cases were transferred from Superior Court to District Court far more than 30 days after their arrests (seven months for one codefendant and one year for the other). 964 F.2d at 1188. The transfer followed a presidential announcement of a new policy for combatting drugs in the District of Columbia, which called for prosecution of more drug case in federal court. *Id*. The court held that there was no Speedy Trial Act violation because the arrest and charging in Superior Court did not trigger the 30-day federal indictment clock. *Id*. at 1193. Likewise, in *Knight*, the defendant's case was transferred from Superior Court to District Court approximately three months after his arrest. 824 F.3d at 1109. The District Court held that the defendant's arrest for a D.C. Code offense did not trigger the 30-day indictment clock. *Id*. at 1110.

### C. The Defendant Has Not Suffered a Prejudicial Delay Cognizable Under the Sixth Amendment's Speedy Trial Clause.

Since *Mills* and *Knight* foreclose the Defendant's statutory argument, the Defendant points instead to the Sixth Amendment's Speedy Trial Clause. The Sixth Amendment provides that "[i]n

7

all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. Unlike its statutory counterpart, the constitutional speedy-trial right "is amorphous, slippery, and necessarily relative. It is consistent with delays and dependent upon circumstances." *Vermont v. Brillon,* 556 U.S. 81 (2009) (citations, internal quotation marks, and brackets omitted). Although "[t]he absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim," it is an "unusual case" in which the Act is followed but the Constitution is violated. *United States v. Rice,* 746 F.3d 1074, 1081 (D.C.Cir.2014).

Here, the delay is nowhere near sufficient to trigger the application of the *Barker* factors. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972), as reiterated in *Doggett v. United States*, 505 U.S. 647, 651 (1992). As the Supreme Court made clear in *Doggett*, "to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . . ." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). The Defendant cannot make that required initial showing.

At this stage of the case, as the Defendant concedes, *see* ECF 12 at 5, the length of any delay remains unknown. At most, the Defendant can claim a delay of 82 days. The Defendant points to no case (and the Government is aware of no case) in which an 82-day delay was cognizable under the Sixth Amendment. Indeed, the D.C. Circuit has upheld much longer delays against speedy trial challenges. *See, e.g., United States v. Tchibassa*, 452 F.3d 918, 922 (delay of nearly eleven years); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 202-03 (D.C. 2013) (delay of three-and-a-half years). As a general benchmark, courts have found that a delay that approaches one year is considered presumptively prejudicial. *Norris v. Schotten*, 146 F.3d 314, 327 (6th Cir. 1998) (citing *Doggett*, 505 U.S. at 652 n. 1). Court have varied in their treatment of

8

delays of just under one year. *Compare United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007) ("assum[ing] without deciding that the nearly ten-month delay is presumptively prejudicial," necessitating discussion of remaining *Barker* factors), *and Norris*, 146 F.3d at 327 ("presum[ing] the delay of eight months to be prejudicial"), *with United States v. White Horse*, 316 F.3d 769, 774 (8th Cir. 2003) (9-and-a-half-month delay not presumptively prejudicial); *and United States v. Cope*, 312 F.3d 757, 777 (6th Cir. 2002) (9-month delay not presumptively prejudicial).

Here, the delay does not even approach the threshold needed to trigger the *Barker* analysis. Moreover, had this case remained in Superior Court, even after 100 days, the Defendant's case would not have been dismissed. Rather, after 100 days (October 3, 2025), the Defendant could have contested his detention and would have been released unless the court found a good cause for the delay. *See* 23 D.C. Code § 1322(h)(1) and (3). If the Defendant were released in that scenario, the Government would have been required to indict the case within nine months of arraignment (March 25, 2026).

Additionally, viewed from the perspective of the District Court case, the pretrial delay is even less substantial. Had the case been charged in District Court from the beginning, the Government would have been entitled to thirty days to obtain an indictment, 18 U.S.C. § 3161(b), and an additional seventy days before trial. 18 U.S.C. § 3161(c)(1). Clocks would have tolled for delays resulting from pretrial motions such as the Defendant's Motion to Suppress Evidence. ECF 11. Thus, even assuming the Court resolved the suppression issue in two to three weeks and no other delays resulted, trial would not have been required to commence until mid to late October 2025.

Notably, the Defendant makes no claim that any delay in this case prejudiced his defense. Instead, the Defendant points only to the prejudice of pretrial detention. ECF 12 at 5. Yet by

transferring this case to District Court, the Government did not automatically lengthen the Defendant's pretrial detention. Indeed, the transfer has provided the Defendant with a new opportunity, within the 100-day window of detention in Superior Court pursuant to 23 D.C. Code § 1322(h)(1), to litigate pretrial detention. If this Court finds that continued pretrial detention is not appropriate due to the transfer of the case to District Court, release, rather than dismissal with prejudice, would be the proper remedy.[4]

### D. The Transfer to District Court Did Not Deny the Defendant his Due Process Rights.

Although *Mills* and *Knight* make clear that arrest and charging in Superior Court does not trigger the 30-day federal indictment clock, both cases note that a Due Process problem may arise where a defendant is "deliberately arrested on D.C. Code charges in order for the Government to gain time to gather evidence for a federal prosecution." *Knight*, 824 at 1110; *Mills,* 964 F.2d at 1192 ("If a defendant showed that the U.S. Attorney deliberately arrested him on D.C. charges and secured a Superior Court indictment in order to gain time to gather additional evidence for a federal prosecution, he might have a valid due process claim for pre-indictment delay.").

Here, the Government has not secured any additional evidence for federal prosecution during the pendency of the Defendant's case in Superior Court. Indeed, all the evidence the Government anticipates introducing at trial—body-worn camera footage and a firearm found on the Defendant's person—was disclosed in the Defendant's Superior Court case, and the Defendant points to no advantage gained by the Government through initially charging the case in Superior Court. Indeed, the Government gained no unfair advantage by initially charging the case in Superior Court, and the transfer in no way prejudiced the Defendant's ability to mount a defense.

---

[4] For the reasons stated in the Government's Memorandum in Support of Pretrial Detention, ECF 6, the Government continues to recommend pretrial detention.

### E. In Transferring the Defendant's Case to Federal Court, the Government Has Not Engaged in Prosecutorial Harassment or Vindictiveness.

The Defense next turns to bare allegations of prosecutorial misconduct and vindictiveness, ECF 12 at 7-9, all of which are without merit. First, the Defendant asserts that, "The Indictment, ECF 1, demonstrates no federal interest in prosecuting this matter, but rather charges D.C. Code firearm offenses and adds a federal ammunition charge based on ammunition found in the firearm." ECF 12 at 1. As the Defendant sees it, "The Indictment charges only the ammunition violation under federal law to obtain jurisdiction here. There is only one possible explanation for the government's decision to seek to enforce D.C. law in this courthouse: the government wants to continue Mr. Gaffney's pretrial detention while delaying addressing the merits of his case. The reason for this too is clear, the Fourth Amendment violations are recorded on the BWC videos and undeniable." ECF 12 at 7.

There is another explanation. The Government anticipates proving at trial that the gun found on the Defendant's person is a ghost gun lacking a unique serial number. Ordinarily, when the Government recovers a gun, it can identify where the gun was initially purchased based on its serial number, enabling a determination of whether the gun traveled in interstate commerce as required by 18 U.S.C. 922(g). When a loaded ghost gun is recovered, as was the case here, the Government can proceed by proving that the ammunition traveled in interstate commerce while separately charging the illegal firearm under District of Columbia Law.

Next, the Defendant argues that the indictment should be dismissed because the decision to bring charges in federal court was made vindictively, in response to either the Defendant's a) motion to suppress or b) demand for a trial. ECF 12 at 9. Neither alternative is borne out by the facts.

"The Due Process Clause prohibits prosecutors from 'upping the ante' by filing increased charges in order to retaliate against a defendant for exercising a legal right." *United States v. Slatten*, 865 F.3d 767, 798-99 (D.C. Cir. 2017) (citation omitted). Because prosecutors have "broad discretion to enforce the law," however, to succeed on a claim of vindictive prosecution, the Defendant must establish that any "increased charge was 'brought *solely* to penalize' [him] and could not be justified as a proper exercise of prosecutorial discretion." *Id.* (citation omitted). A defendant may prove prosecutorial vindictiveness by submitting either "(i) evidence of the prosecutor's actual vindictiveness or (ii) evidence sufficient to establish a realistic likelihood of vindictiveness, thereby raising a presumption the Government must rebut with objective evidence justifying its action." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (internal quotation marks omitted) (citing *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). "To prove actual vindictiveness requires objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights. Such a showing is normally exceedingly difficult to make." *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002) (quoting *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001)).

The Defendant offers no evidence of vindictiveness but alleges a presumption of vindictiveness based on the timing of the transfer to District Court. The Defendant argues that the transfer was done either in relation for the Defendant requesting a trial or for filing a suppression motion. ECF 12 at 9. "To invoke the presumption of vindictiveness, [the court] must find that a reasonable likelihood of vindictiveness exists—that is, that the second indictment was 'more likely than not attributable to the vindictiveness on the part of' the [g]overnment." *Id.* (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989)). A pretrial decision "to modify the charges" alone will not raise such a presumption because a prosecutor must "remain free before trial" to determine "the

12

extent of the societal interest" in a given prosecution. *United States v. Goodwin*, 457 U.S. 368, 380–82 (1982). "The routine exercise of many pre-trial rights also weakens any inference of vindictiveness, i.e., that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense." *United States v. Slatten*, 865 F.3d 767 (D.C. Cir. 2017). "Where the defendant provides evidence sufficient to support a presumption of vindictiveness, the burden shifts to the government to produce 'objective evidence' that its motivation in charging the defendant was lawful." *United States v. Meadows*, 867 F.3d 1305, 1312 (D.C. Cir. 2017) (quoting *Safavian*, 649 F.3d at 694). "That burden is 'admittedly minimal—any objective evidence justifying the prosecutor's actions will suffice.'" *Id.* (quoting *Safavian*, 649 F.3d at 694). If the government can produce objective evidence that its motive in prosecuting the defendant was not vindictive, then "the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred." *United States v. Meyer*, 810 F.2d 1242, 1243 (D.C. Cir.), *reh'g en banc granted, opinion vacated*, 816 F.2d 695 (D.C. Cir. 1987), and *opinion reinstated on reconsideration sub nom. Bartlett on Behalf of Neuman v. Bowen*, 824 F.2d 1240 (D.C. Cir. 1987).

The Defendant's conjecture about the timing of the transfer to District Court does not give rise to a presumption of vindictiveness. More than two months separated the Defendant's trial demand on July 3, 2025 and the federal indictment returned on September 12, 2025. The Government gained no advantage for trial during the intervening two months, and indeed, it is generally more advantageous to the Government to quickly transfer cases to District Court. Among other reasons, when a case remains in Superior Court, a Defendant can be released at any time based on a bond review motion. In addition, while the case is pending, the government must spend time preparing for litigation in Superior Court. As to the suppression motion, the fact that the Defendant filed a suppression motion the same day the case was indicted federally is purely

13

coincidental. This case was identified for transfer to District Court and scheduled for presentation before the grand jury before the Defendant filed his motion in Superior Court. Regardless, "proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption [of vindictiveness] in the pretrial context" because "this sequence of events, taken by itself, does not present a 'realistic likelihood of vindictiveness.'" *Meyer*, 810 F.2d at 1246.

Moreover, there was ample legitimate justification to charge this case in federal court. In this jurisdiction, courts have upheld the Government's efforts to dismiss charges against a defendant in Superior Court and then charge the defendant in District Court to take advantage of more favorable federal sentencing practices. *See, e.g., United States v. Mills*, 925 F.2d 455, 461 (D.C. Cir. 1991) (holding, in a case in which the government dismissed Superior Court cases to bring charges in district court, that the "U.S. Attorney for the District of Columbia may elect to prosecute a given criminal defendant on federal rather than District [of Columbia] charges, even though the former carry stiffer penalties. In fact, the prosecutor may select one alternate charge over another precisely *because* the selected offense carries a more severe sentence.") (citing *United States v. Batchelder*, 442 U.S. 114, 124-25 (1979))[5]; *United States v. Simmons*, No. 18-344 (EGS), 2022 WL 1302888, at *19-20 (D.D.C. May 2, 2020) (no prosecutorial harassment where the government charged a defendant in Superior Court, indicted him in federal court and then dismissed the Superior Court case, because the government believed that the defendant's criminal history merited a federal charge and a more just sentence); *United States v. Gerald*, 5 F.3d 563, 566 (D.C. Cir. 1993) (rejecting vindictiveness claim that Government's transfer of his case to

---

[5] The *Mills* case previously discussed is D.C. Circuit *en banc* rehearing in *Mills* to reconsider the panel's Speedy Trial Act holding. The *en banc* court declined to "disturb" the panel's due-process holding. *See Mills*, 964 F.2d at 1188 n.3.

federal court was improper because it was made for the purpose of taking advantage of the higher penalties available under the U.S. Sentencing Guidelines).

Here, the Defendant has twice been convicted in Superior Court of Unlawful Possession of a Firearm (Prior Conviction) and more recently been convicted of Assault with a Dangerous Weapon. Surely, the Government is entitled to seek a federal charge and a just sentence here. Defendant's claims of prosecutorial harassment or vindictiveness are baseless.

### F. The Firearm Was Lawfully Seized from the Defendant, and the Government Should Have the Opportunity to Fully Litigate That Issue at a Suppression Hearing.

Finally, the Defendant urges this Court to prejudge his Motion to Suppress and conclude that the transfer to District Court merely "delay[ed] the inevitable finding that Mr. Gaffney was unlawfully seized and searched in violation of the Fourth Amendment." ECF 12 at 1. The Government anticipates more fully responding to the Defendant's Motion to Suppress in advance of a Suppression Hearing. But, in short, the encounter between Officer Nguyen and the Defendant did not amount to a seizure until after officers had legal grounds to search and seize the Defendant.

A seizure by show of authority occurs only when police make a show of authority sufficient to cause a reasonable person to believe that he is not free to terminate the encounter. *See, e.g., California v. Hodari D.*, 499 U.S. 621, 628 (1991); *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994). In assessing whether police action amounted to a show of authority, "[t]he hypothesized 'reasonable person' is an *innocent* person." *(Albert) Jones v. United States*, 154 A.3d 591, 595 (D.C. 2017). It is generally not a show of authority for the police simply to approach a citizen, ask questions, ask if they can examine identification, or ask for consent to search. *See, e.g., United States v. Drayton*, 536 U.S. 194, 200–01 (2002); *Florida v. Bostick*, 501 U.S. 429, 434–35 (1991); *United States v. Lewis*, 921 F.2d 1294, 1298–99 (D.C. Cir. 1990); *Maye v. United*

15

*States*, 314 A.3d 1244, 1252–53 (D.C. 2024); *Brown v. United States*, 983 A.2d 1023, 1026 (D.C. 2009).

Police did not make such a show of authority here. Only two officers approached the Defendant initially, while the Defendant was with a group of other people, and the officers asked the Defendant questions but did not give commands. Early in the encounter, the Defendant admitted to possessing marijuana, which is illegal under federal law. *See* 21 U.S.C. § 844(a).[6] After the Defendant admitted to possessing marijuana and pulled a bag of cocaine out of his pocket, the police seized and searched the Defendant and recovered a loaded ghost gun from his person. Regardless, the Government is entitled to an opportunity to fully litigate these issues through a suppression hearing and related briefings.

### G. Supervisory Authority is an Extreme Remedy.

The Defendant argues that this Court should exercise its supervisory authority to dismiss the case entirely due to the Government's transfer of the case to District Court after the case was pending in Superior Court for approximately 80 days. A court may dismiss an indictment based upon its inherent authority only if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254-56, 263 (1988); *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (stating that "[a] court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice and where no lesser remedial action

---

[6] Several courts have upheld seizures by local law enforcement predicated on probable cause showings of violations of federal law irrespective of state law. *See*, *e.g., United States v. Sanders*, 248 F. Supp. 3d 339, 346 (D.R.I. 2017) (marijuana); *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009) (ammunition); *Gonzales v. City of Peoria*, 722 F.2d 468, 474 (9th Cir. 1983), *overruled on other grounds by* Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999) (en banc) (immigration offenses).

is available"). "The supervisory power doctrine is an extraordinary one which should be 'sparingly exercised.'" *United States v. Jones*, 433 F.2d 1176, 1181–82 (D.C. Cir. 1970). "[D]ismissal of an indictment with prejudice is the most severe sanction possible. Such dismissal exercised under the guise of 'supervisory power' is impermissible absent a clear basis in fact and law for doing so." *United States v. Slough*, 679 F. Supp. 2d 55, 61 (D.D.C. 2010) (quoting *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir.1992)). In the context of prosecutorial decisions, "the federal judiciary's supervisory powers over prosecutorial activities that take place outside the courthouse is extremely limited, if it exists at all." *United States v. Lau Tung Lam*, 714 F.2d 209, 210 (2d Cir. 1983).

Here, the Government has not engaged in any misconduct, the extent of any delay in resolving the Defendant's case is minimal, and the Government has in no way prejudiced the Defendant from presenting a defense. Indeed, the Defendant does not even allege any such prejudice. The only prejudice the Defendant alleges here is extended pretrial detention. That condition was properly imposed in Superior Court after a judge found probable cause and concluded that no condition or combination of conditions could ensure the safety of the community. To the extent the Court is inclined to impose a remedy, release – not dismissal with prejudice – should be the only remedy the Court considers.[7]

## IV.   CONCLUSION

Because (1) the delays in Superior Court do not rise to a statutory or constitutional speedy trial violation or a denial of Due Process; (2) the Defendant has not shown vindictiveness; (3) the Court's supervisory powers are not warranted here; and (4) dismissal is not an appropriate remedy

---

[7] For the reasons stated in the Government's Memorandum in Support of Pretrial Detention, ECF 6, the Government continues to recommend pretrial detention.

for the harm alleged, the Court should deny the Defendant's Motion to Dismiss Indictment, ECF 12.

                              Respectfully submitted,

                              JEANINE FERRIS PIRRO
                              UNITED STATES ATTORNEY
                              NY Bar Number 1387455

By:    /s/ Jacob M. Green
        JACOB M. GREEN
        Assistant United States Attorney
        MA Bar Number 706143
        601 D Street NW
        Washington, D.C. 20530
        (202) 803-1617
        Jacob.green3@usdoj.gov