## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES, | |
| v. | Criminal Action No. 25‑282 (SLS) |
| | Judge Sparkle L. Sooknanan |
| ENJOLI JAMES GAFFNEY, | |
| *Defendant*. | |

### <u>MEMORANDUM OPINION</u>

Our Constitution guarantees a speedy trial to anyone accused of a crime. This bedrock right is rooted in the recognition that an accused is presumed innocent until proven guilty in a court of law. For this reason, pretrial detention is *not* the default in our criminal justice system. Indeed, the touchstone of the speedy trial guarantee is the prevention of unnecessary or prolonged pretrial detention. The Supreme Court has made clear that the Constitution aims to "minimize the possibility of lengthy incarceration prior to trial" and "shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. 1, 8 (1982). To this end, courts may enforce the speedy trial guarantee through several mechanisms. The federal Speedy Trial Act governs delays for federal offenses. Federal district courts also retain inherent authority to dismiss indictments for unnecessary delay, a principle codified in Federal Rule of Criminal Procedure 48(b). And the Sixth Amendment's Speedy Trial Clause cements the protection as a constitutional right.

Given these longstanding and uncontroversial principles, it would surely shock the conscience if the Government started detaining individuals before even bringing criminal charges against them. Yet, because of the somewhat unique nature of criminal prosecution in the District

of Columbia, the U.S. Attorney's Office has effectively been doing just that. In the last several months, prosecutors have been "parking" cases in D.C. Superior Court—*i.e.*, charging individuals in D.C. Superior Court and detaining them while deciding whether to pursue federal charges—resulting in the prolonged and unnecessary pretrial detention of District residents.

In this case, the U.S. Attorney arrested and charged Enjoli James Gaffney in D.C. Superior Court on D.C. Code firearm possession charges. Mr. Gaffney was immediately detained; he asserted his innocence and speedy trial rights; and the D.C. Superior Court set a trial date. But the U.S. Attorney preferred to pursue federal charges against Mr. Gaffney, and so she set out to obtain a federal indictment. Had the U.S. Attorney taken this path after Mr. Gaffney's arrest rather than parking him in D.C. Superior Court on local charges, she would have had 30 days to secure an indictment. Instead, the U.S. Attorney took 73 days from Mr. Gaffney's arrest to begin the grand jury process and 80 days obtain a federal indictment—time Mr. Gaffney spent in pretrial detention at the D.C. Jail. When pressed to explain the reason for the delay, the U.S. Attorney's Office did not provide one, and could muster only that the delay was "out of the ordinary" for the Office. And Mr. Gaffney is not alone. The Federal Public Defender has identified several recent cases where the U.S. Attorney has followed the same approach.[1]

This course of conduct raises significant constitutional concerns. The Supreme Court has identified a balancing test that weighs the conduct of the prosecution and the defendant in assessing

---

[1] *See United States v. Wright*, No. 25-cr-104 (D.D.C. 2025) (defendant arrested and charged in D.C. Superior Court on November 19, 2024; D.C. Superior Court denied government's motion to continue a March 10, 2025, trial date and dismissed for want of prosecution; federal indictment returned on April 10, 2025); *United States v. Hopkins*, 25-cr-118 (D.D.C. 2025) (defendant arrested and charged in D.C. Superior Court on November 20, 2024; trial set in D.C. Superior Court for May 5, 2025; federal indictment returned on April 24, 2025); *United States v. Vanterpool*, 25-cr-138 (D.D.C. 2025) (government moved case to federal court in April 2025 after D.C. Superior Court released defendant as sanction for discovery violations that delayed trial and while motion to dismiss based on government misconduct remained pending).

the constitutionality of pretrial detention. *See Barker v. Wingo*, 407 U.S. 514 (1972). Courts are to assess the length of the delay, the justification for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant. *Id*. at 530. Applying those factors here, the Court doubts the constitutionality of Mr. Gaffney's pretrial detention. The delay in this case is inexplicable. Mr. Gaffney is charged with possession of a firearm. To obtain the current indictment, the U.S. Attorney's Office presented one witness and five photographs to the grand jury. The body-worn camera evidence totaled eight minutes. And the prosecutors had all the evidence on the day Mr. Gaffney was arrested. As Magistrate Judge Zia M. Faruqui remarked in recommending dismissal of the indictment, "[t]his is about the simplest case you can have in federal court." Yet somehow, it took the U.S. Attorney 73 days from arrest to begin the grand jury process and 80 days to obtain an indictment. Meanwhile, the justification for the delay is virtually nonexistent. Despite multiple opportunities to provide a reason, the U.S. Attorney's Office declined to do so. On the remaining factors, Mr. Gaffney has consistently asserted his speedy trial rights and suffered obvious prejudice while incarcerated at the D.C. Jail. So, balancing these factors, there are serious questions about the constitutionality of Mr. Gaffney's pretrial detention.

But the Court need not reach that constitutional question. *See Matal v. Tam*, 582 U.S. 218, 230–31 (2017). Federal Rule of Criminal Procedure 48(b) grants district courts the discretion to dismiss an indictment if "unnecessary delay" occurs in presenting a charge to a grand jury or bringing a defendant to trial. Based on the record before the Court, dismissal is warranted under Rule 48(b). The U.S. Attorney's Office acknowledged at oral argument that the delay in Mr. Gaffney's case is out of the ordinary and all but conceded that it was unnecessary.

This Court recently remarked on the incredible power that prosecutors hold over life and liberty. *See United States v. Beidleman*, No. 25-cr-270, 2025 WL 2803850 (D.D.C. Oct. 1, 2025).

The Court refuses to turn a blind eye to yet another example of the U.S. Attorney's Office choosing to exercise the power it wields without regard for the very individuals it serves. The Office's seemingly cavalier approach to pretrial detention is alarming, particularly at a facility with a death rate that is three times the nationwide average, and well-documented "structural decay, staff shortages, and inadequate medical and behavioral health care." *See United States v. Akers*, No. 11-cr-313, 2025 WL 2611703, at *3 (D.D.C. Sept. 10, 2025). For too many defendants, there is little the Court can do to correct the injustices that result from troubling prosecutorial decision-making. But for Mr. Gaffney, Rule 48(b) vests the Court with discretion that it chooses to exercise here. After 136 days of pretrial detention, the Court dismisses this indictment with prejudice.

## BACKGROUND

### A. Constitutional Background

The speedy trial guarantee as we know it today dates back to English common law and is rooted in the Assize of Clarendon (1166), the Magna Carta (1215), and the Habeas Corpus Act (1679). Because the modern doctrine is best understood against the backdrop of this history, the Court briefly traces its course.

### 1. The Right to a Speedy Trial

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. The right guarantees a "bedrock, axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." *Betterman v. Montana*, 578 U.S. 437, 442 (2016) (cleaned up). And "the touchstone of the speedy trial right . . . is the substantial deprivation of liberty that typically accompanies an accusation," *Doggett v. United States*, 505 U.S. 647, 663 (1992) (Thomas, J., dissenting) (cleaned up).

Because "the Speedy Trial Clause's core concern is impairment of liberty," *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986), it applies with special force to "undue and oppressive

incarceration prior to trial," *Betterman*, 578 U.S. at 442 (citation omitted). As the Supreme Court has explained, "[t]he speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *MacDonald*, 456 U.S. at 8.

### 2.    Common Law Origin

As originally understood, the Speedy Trial Clause "introduce[d] into the [C]onstitution some of the general guards and proceedings of the common law in criminal trials." 3 Joseph Story, Commentaries on the Constitution of the United States § 1785 (1833). So, courts consider "our English law heritage" when determining the contours of the right. *Betterman*, 578 U.S. at 442 (quoting *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967)).

The common law right has its roots in King Henry II's Assize of Clarendon (1166) and the Magna Carta (1215). *Klopfer*, 386 U.S. at 223. Under the Assize, the King's sheriffs were to take the accused "straightway without delay" and "lead them before the [King's] Justice." Assize of Clarendon (1166) ¶ 6, *in* Ernest F. Henderson, Select Historical Documents of the Middle Ages 143 (1896). "[I]f the Justices shall not be about to come quickly enough into that county," the sheriff was to "send word" of the arrest and "the Justices shall send back word to the sheriffs where they wish those men to be brought before them: and the sheriffs shall bring them before the Justices." *Id.* ¶ 4. The right was also enshrined in the Magna Carta, which provided that the King "will not deny or defer to any man either justice or right." *Klopfer*, 386 U.S. at 223 (quoting Magna Carta (1215), ch. 29).

The right to a speedy trial was implemented in English law by the Habeas Corpus Act of 1679. *United States v. Marion*, 404 U.S. 307, 314 n.6 (1971); *see also Commonwealth v. Adcock*,

49 Va. 661, 676 (Va. Gen. Ct. 1851) (describing the speedy trial right as a "re-affirmance of a principle declared and consecrated by" the Habeas Corpus Act and the Magna Carta). That Act sought to prevent "great delays" by the King's "officers, to whose custody any of the [K]ing's subjects have been committed, for criminal or supposed criminal matters," and to ensure such officers not act "contrary to their duty" by having subjects "detained long in prison." Habeas Corpus Act, 31 Charles II, Ch. 2 (1679), *in* Francis Lieber, On Civil Liberty and Self-Government 483 (3d rev. ed. 1883). The Act required a committed felon to be indicted within two court terms or otherwise "be discharged from his Imprisonment." *Id.* ¶ VII. And, to prevent circumvention of the law, the Act further provided that the accused "shall not be removed from the said prison and custody, into the custody of any other officer or officers" except in limited, enumerated circumstances. *Id.* ¶ IX. Blackstone referred to the statute as the "bulwark of our constitution" as it ensured "release" of detainees when "committed even by the king in council." 4 William Blackstone, Commentaries *432. And, in drafting the Constitution, the Founders considered the Act's guarantees as a fundamental protection against "arbitrary government" and "gross and notorious [] act[s] of despotism." The Federalist No. 84 (Alexander Hamilton) (emphasis omitted) (quoting 1 William Blackstone, Commentaries *131–132).

The English common law long recognized that "no subject of England can be long detained in prison, except in those cases in which the law requires and justifies such detainer." 1 William Blackstone, Commentaries *131. And, by the time of the founding, these principles were firmly established in the common law of our Nation as well. *Klopfer*, 386 U.S. at 223.

### 3.    The Right at the Founding

"Regarding the Framers' comprehension of the right as it existed at the founding, [the Supreme Court] ha[s] cited Sir Edward Coke's Institutes of the Laws of England" as particularly

insightful. *Betterman*, 578 U.S. at 442; *see also Klopfer*, 386 U.S. at 225–26 (noting Coke's influence on Thomas Jefferson, George Mason, and others in formulating the Sixth Amendment and its predecessors). Indeed, Chief Justice Rutledge considered the Institutes "to be almost the foundation of our law." *Id.* at 225 (quoting Catherine Bowen, The Lion and the Throne 514 (1956)).

For Coke, the speedy trial right ensured that courts would "not suffer[] the prisoner to be long detained, but at their next com[]ing have given the prisoner full and speedy justice, by due trial[], without detaining him long in prison." Edward Coke, The Second Part of the Institutes of the Laws of England 43 (Brooke 5th ed. 1797) (Coke, Institutes); *see also Klopfer*, 386 U.S. at 224. "To Coke, prolonged detention without trial would have been contrary to the law and custom of England . . . [and] delay in trial, by itself, would be an improper denial of justice." *Klopfer*, 386 U.S. at 224. The speedy trial right enshrined this principle—"none [shall] be imprisoned . . . but in the common g[oal], to the end they might have their trial[]." Coke, Institutes, at 42; *see also Betterman*, 578 U.S. at 442 ("[T]he innocent shall not be worn and wasted by long imprisonment, but . . . speedily come to his tria[l]." (quoting Coke, Institutes, at 315) (emphasis omitted)).

The Sixth Amendment codified this common law right to address concerns that the Constitution would otherwise fail to

> prevent the attorney-general from filing information against any person, whether he is indicted by the grand jury or not; in consequence of which the most innocent person in the commonwealth may be taken . . . dragged from his home, his friends, his acquaintance, and confined in prison . . . and after long, tedious, and painful imprisonment, though acquitted on trial, may have no possibility to obtain any kind of satisfaction for the loss of his liberty, the loss of his time, great expenses, and perhaps cruel sufferings.

2 Jonathan Elliot, The Debates in the Several State Conventions on the Adoption of the Federal Constitution as Recommended by the General Convention at Philadelphia in 1787 110 (2d ed. 1891) (Massachusetts Ratification Debate).

### 4. Early Jurisprudence

There is a paucity of early federal jurisprudence on the Constitution's Speedy Trial Clause. During the trial of Aaron Burr, Chief Justice Marshall remarked that the guarantee "entitles [the accused] to compulsory process as soon as he is brought into court." *United States v. Burr*, 25 F. Cas. 30, 33 (C.C.D. Va. 1807) (Marshall, C.J.). And the full Supreme Court first addressed the right in *Beavers v. Haubert*, where it described the right as "necessarily relative" and "depend[ent] upon circumstances." 198 U.S. 77, 87 (1905).

That said, early, post-colonial state courts addressed the original understanding of the right, as reflected in the speedy trial protections of early state constitutions, statutes, and common law. *See Klopfer*, 386 U.S. at 225 n.21 (citing the constitutions of Delaware, Maryland, Pennsylvania, and Virginia); *Petition of Provoo*, 17 F.R.D. 183, 197 n.6 (D. Md. 1955) (citing statutes in New Jersey, South Carolina, Georgia, and Massachusetts), *id.* at 197 n.7 (citing case law of various early states). These state provisions acted as the "model" for the Sixth Amendment's drafters and largely mirrored the protections of the English Habeas Corpus Act of 1679. *Marion*, 404 U.S. at 314 n.6 (first citing Francis Heller, The Sixth Amendment to the Constitution of the United States 23 n.5 (1951), and then citing *Provoo*, 17 F.R.D. at 197 n.6).

In expounding on the right, the South Carolina Constitutional Court of Appeals described the speedy trial guarantee as "the duty of the court to take care that criminal causes should not be unreasonably protracted or delayed." *State v. Buyck*, 2 S.C.L. 563, 564 (S.C. Const. App. 1804). The General Court of Virginia recognized that the "whole purpose" of the right was to "secure [the accused] against protracted imprisonment." *Adcock*, 49 Va. at 676. And the Supreme Court of Pennsylvania provided perhaps the most comprehensive exposition of the protection:

> [The speedy trial guarantee] was intended to provide against the abuse of a protracted trial, to provide not only against the malice of a prosecutor, but against

> his negligence, against all *his* delays, whether with cause or without cause, against every possible act, *or* want of action, of the prosecutor; but not to shield a prisoner, in any case, from the consequences of any delay made necessary by the law itself.

*Commonwealth v. Sheriff of Allegheny Cnty.*, 1827 WL 2718, at *2 (Pa. 1827). Undoubtedly, "at the time of the founding" and thereafter, the "key concern" of the speedy trial guarantee is to prevent prolonged "pretrial detention." Akhil Reed Amar, *Sixth Amendment First Principles*, 84 Geo. L.J. 641, 659 (1996).

### 5.    The Modern Right and the District of Columbia

Today, the Federal Rules of Criminal Procedure still recognize the "inherent power of the court to dismiss a case for want of prosecution" from "unnecessary delay." Fed. R. Crim. P. 48(b); Advisory Committee Note (1944), Fed. R. Crim. P. 48. And the "sole remedy for a violation of the speedy trial right" is "dismissal of the charges." *Betterman*, 578 U.S. at 444. To avoid the need for this severe remedy, Congress passed the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.*, and gave "effect to the sixth amendment right." *MacDonald*, 456 U.S. at 7 n.7 (quoting S. Rep. No. 93–1021, at 1 (1974)). And various states have adopted "analogs" with a similar purpose. *Betterman*, 578 U.S. at 445.

"[T]he Speedy Trial Act" and its state counterparts have "mooted much litigation about the requirements of the Speedy Trial Clause." *Id.* (quoting *Loud Hawk*, 474 U.S. at 304 n.1). And recent jurisprudence about the scope of the right is sparse. *Cf. id.* The constitutional question surfaces now only where there are highly "unusual facts" like "the Government dismiss[ing] charges pending in one district in order to prosecute the defendants on those same charges in another district." *MacDonald*, 456 U.S. at 7 n.7. As this case illustrates, the unique status of the District of Columbia increases the likelihood of triggering the constitutional guarantee.

The federal Speedy Trial Act requires an indictment or information to be brought within 30 days of an individual being arrested for or served with a summons in connection with their

alleged commission of an offense. 18 U.S.C. § 3161(b). And a trial must "commence within seventy days from the filing [of the indictment or information]." *Id.* § 3161(c)(1). Similarly, under the D.C. Code, defendants once detained "shall have trial of the case commence before the expiration of 100 days." D.C. Code § 23-1322(h)(1). But uniquely, in the District of Columbia, the United States Attorney can "manipulate the order of [the indictments], so as to intentionally avoid the Act" by first parking defendants in D.C. Superior Court and then later transferring them to federal district court once the D.C. Code speedy trial clock nears expiration. *United States v. Robertson*, 810 F.2d 254, 258 (D.C. Cir. 1987). When enacting the Speedy Trial Act, Congress recognized this very concern:

> [P]rosecutorial authority for all major offenses committed in the District is vested in the United States Attorney for the District under section 23-101. It is conceivable that this type of overlapping jurisdiction could result in 'forum-shopping' in an attempt to escape the speedy trial restrictions that will apply to the Federal courts in D.C. if this legislation is enacted. Such a result would be anti-ethical [sic] to the goals of Federal speedy trial legislation, and the Committee feels that the Congress would have an obligation upon discovering such abuses to remedy the situation through future legislation.

H.R. Rep. No. 93–1508 *reprinted in* 1974 U.S.C.C.A.N. 7401, 7441.

In the rare instances the U.S. Attorney has engaged in such practices before, the D.C. Circuit has recognized that the constitutional Sixth Amendment speedy trial clock continues to run, even though the federal statute does not apply. *United States v. Mills*, 964 F.2d 1186, 1193 (D.C. Cir. 1992) (en banc). Thus, it becomes the district court's obligation to examine the propriety of such delays under its inherent authority and the Constitution—much like courts did before Congress enacted the Speedy Trial Act. *See id.*

The D.C. Circuit has long warned that judicial intervention would be needed on the fateful day the Government chooses to "park[] a defendant in D.C. Superior Court to avoid the Speedy Trial Act." *United States v. Knight*, 824 F.3d 1105, 1110 (D.C. Cir. 2016). But the Court also

characterized the risk of widespread "manipulation" in this way as "slim," *Robertson*, 810 F.2d at 258, as the purposeful use of this tactic would be to "impute questionable ethics to the U.S. Attorney," for which, previously, there was no basis. *Id.*

### B.    Factual Background

On June 25, 2025, Metropolitan Police Department officers approached and questioned a group about whether an open container contained alcohol. *See* Response, ECF No. 20, Ex. 1, at 4:13–20; Gerstein Affidavit, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. June 25, 2025). Mr. Gaffney was present on the scene. Response, Ex. 1, at 4:20–22. The officers proceeded to ask Mr. Gaffney if anything was in his waistband. *See* Det. Hr'g Tr. at 5:17–24; Response, Ex. 1, at 4:25–5:1–7. Mr. Gaffney responded by showing his waistband, where officers reportedly saw contraband. Response, Ex. 1, at 4:25–5:1–7. The officers then seized a firearm from Mr. Gaffney during a search incident to arrest. *See* Indictment, Response, Ex. 1, at 5:4–7.

The Government filed a criminal complaint in the Superior Court of the District of Columbia charging Mr. Gaffney with unlawful possession of a firearm (based on a prior conviction), in violation of D.C. Code § 22-4503(a)(1); carrying a pistol without a license, in violation of D.C. Code § 22-4504(a)(1); and possession of a prohibited weapon, in violation of D.C. Code § 22-4514(a)(c)(1). *See* Compl. 1–2, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. June 25, 2025).

On June 27, 2025, the D.C. Superior Court judge assigned to Mr. Gaffney's case held a hearing and ordered Mr. Gaffney detained pending trial. *See* Minute Entry, Jun. 27, 2025, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. 2025). The court scheduled the trial for October 2, 2025, *see* Minute Entry, July 7, 2025, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. 2025), which was within the statutorily set deadline of 100 days, *see* D.C. Code § 23-

1322(h)(1). The Court also set a trial readiness hearing for September 19, 2025. *See* Minute Entry, July 7, 2025, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. 2025).

On July 10, 2025, after the trial date was set, the Government identified this case as a candidate for transfer to federal district court. Objections, ECF No. 19, at 3. The Government then waited until September 5, 2025, to bring the case to a grand jury. Mot. Hr'g Tr. at 12:21–25. The Government proffers no reason for this delay. Mot. Hr'g Tr. at 13:14–16. The Grand Jury returned an indictment on September 12, 2025. *See* Indictment, ECF No. 1. The federal indictment re-charged the possession violations of D.C. Code §§ 22-4503(a)(1) and 22-4514(a)(c)(1) and added a related federal violation of 18 U.S.C. § 922(g)(1). *See id.*

Two other things happened that same day. First, Mr. Gaffney filed a motion to suppress the fruits of the search of his person in D.C. Superior Court. *See* Def.'s Mot. to Supp., *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. Sept. 12, 2025). Second, a federal magistrate judge issued a warrant for Mr. Gaffney's arrest in connection with the federal indictment. *See* Arrest Warrant, ECF No. 4. On September 16, 2025, three days before the scheduled trial readiness hearing, the Government moved to dismiss the pending D.C. Superior Court case without prejudice. *See* Dismissal Praecipe, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. Sept. 16, 2025). The Superior Court judge granted this request and ordered Mr. Gaffney's release. *See* Minute Entry, Sept. 16, 2025, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. 2025). However, Mr. Gaffney remained at the D.C. jail pursuant to the federal arrest warrant. *See* Minute Entry, Sept. 16, 2025. Mr. Gaffney has been detained since then—for a total of 136 days.

## C.    Procedural Background

On September 26, 2025, Mr. Gaffney moved to dismiss this case on speedy trial grounds and filed a motion to suppress evidence mirroring the motion filed in Superior Court. *See* Mot. to

Supp., ECF No. 11 and Mot. Dismiss, ECF No. 12. This Court referred the Motion to Dismiss to

Magistrate Judge Zia M. Faruqui for a Report and Recommendation. *See* Minute Order, September

29, 2025. Judge Faruqui issued a Report and Recommendation concluding that the delay in this

case violated the Sixth Amendment's Speedy Trial Clause. R. & R., ECF No. 16. To prevent

further unnecessary delay, the Court ordered expedited briefing pursuant to Rule 59(b)(2). Fed. R.

Crim. P. 59(b)(2). The Parties fully briefed the issues. Objections, ECF No. 19; Response, ECF

No. 20. The Court also requested expedited supplemental briefing on whether Rule 48(b) dismissal

is appropriate. *See* Minute Order, October 31, 2025. That issue is also fully briefed. Defense Supp.,

ECF No. 24; Gov't Supp., ECF No. 25.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 48(b) provides for the dismissal of "an indictment,

information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury;

(2) filing an information against a defendant; or (3) bringing a defendant to trial." The Rule "is a

restatement of the inherent power of the court to dismiss a case for want of prosecution." *Mann v.*

*United States*, 304 F.2d 394, 398 (D.C. Cir. 1962) (quoting Advisory Committee Note (1944), Fed.

R. Crim. P. 48). And it permits dismissal for unnecessary delays even if there has not been a

violation of the Sixth Amendment or the Speedy Trial Act.[2] When analyzing delays under the

---

[2] *Mathies v. United States*, 374 F.2d 312, 314–15 (D.C. Cir. 1967) (the Rule "places a stricter requirement no speed on the prosecution, and permits dismissal of an indictment even though there has been no constitutional violation"); Committee Note on 2002 Amendment, Fed. R. Crim. P. 48 (the Rule "operates independently from the [Speedy Trial] Act" and "provide[s] an alternate basis" to dismiss (citations omitted)).

The 2002 Amendment to the Rule was "stylistic only" and made no substantive changes from the original rule which read: "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information, or complaint." Committee Note on 2002 Amendment, Fed. R. Crim. P. 48; Fed. R. Crim. P. 48 (1944).

Rule, a court "considers most of the same factors which are relevant for Sixth Amendment purposes." *United States v. Hensley,* No. 18-cr-270, 2024 WL 3673612, at *10 (D.D.C. Aug. 5, 2024) (cleaned up).[3]

Under the Sixth Amendment, speedy trial violations are measured using a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Barker*, 407 U.S. at 530). The Supreme Court in *Barker* identified "some" factors a court should consider in this assessment: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. 407 U.S. at 530. These factors "are related" and are "considered together with such other circumstances as may be relevant." *Id.* at 533. But "none of the four factors" are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.*

When the *Barker* factors show a deprivation of the constitutional right, a court must dismiss the indictment with prejudice. *Betterman*, 578 U.S. at 445 n.6.[4] When "no constitutional violation is found, but unnecessary delay under Rule 48(b) is present," the decision to dismiss rests in the

---

[3] *See also* Charles Alan Wright and Arthur R. Miller, 3B Fed. Prac. & Proc. Crim. § 804 (4th ed. Sept. 2025 Update). The Supreme Court has recognized that the *Barker* factors are not limited to the Sixth Amendment context and instead provide a helpful framework to analyze delay. *United States v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555, 564 (1983); *see also Betterman*, 578 U.S. at 450–51 (Sotomayor, J., concurring).

[4] *See United States v. Sutton*, 862 F.3d 547, 554 (6th Cir. 2017) ("The remedy for a Sixth Amendment speedy-trial violation is dismissal with prejudice."); *United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015) ("Dismissal of the indictment with prejudice is the only possible remedy." (cleaned up)); *United States v. Novelli*, 544 F.2d 800, 803 (5th Cir. 1977) ("The only permissible remedy for violation of the Sixth Amendment right to speedy trial is dismissal with prejudice.").

"sound discretion of the trial court" and can be done either with or without prejudice. *Hanrahan v. United States*, 348 F.2d 363, 368 (D.C. Cir. 1965).[5]

## DISCUSSION

The Court reviews *de novo* Judge Faruqui's Report and Recommendation that the delay in this case violated the Sixth Amendment. *See United States v. Gamarra*, 335 F. Supp. 3d 1, 5 (D.D.C. 2018); R. & R., ECF No. 16. The Court also exercises its inherent authority to review this proceeding for unnecessary delay under Federal Rule of Criminal Procedure 48(b). Because both the Constitution and Rule 48 look to the same *Barker* factors to assess delay, the analysis is largely the same. 407 U.S. at 530. But because dismissal with prejudice is warranted under Rule 48(b), the Court need not reach the constitutional question.

### A.    The Unique Sovereign Status of the District of Columbia

As a threshold matter, the Court begins with a discussion of the unique features of criminal prosecution in the District of Columbia that give rise to this case. "Because District residents live under only one sovereign while most Americans live under two," *United States v. Sumler*, 136 F.3d 188, 191 (D.C. Cir. 1998), the U.S. Attorney's Office for the District of Columbia has the unique power to "prosecute[] both federal offenses and most [local] offenses," *Knight*, 824 F.3d at 1109. "The Office may prosecute D.C. Code charges in D.C. Superior Court. It may prosecute federal charges in U.S. District Court. And it may prosecute combined federal and D.C. Code charges in either U.S. District Court or D.C. Superior Court." *Id.* Thus, "District defendants suffer

---

[5] *See also Nickens v. United States,* 323 F.2d 808, 811 (D.C. Cir. 1963) ("A motion to dismiss under Rule 48(b) is addressed to the sound discretion of the trial court, and when such motion is granted, that action will be sustained unless the trial court is shown to have acted in an arbitrary and clearly unreasonable manner."); *Hensley,* 2024 WL 3673612, at *5–*6 ("If appropriate, this dismissal under Rule 48(b) can be with prejudice." (cleaned up)).

to the extent that they are far more likely to be charged, convicted, and punished under two different statutory schemes." *Sumler*, 136 F.3d at 191.

Since local and federal prosecutions are initiated by the "same sovereign," the Constitution offers District defendants unique protections. *Id.*[6] For states, an arrest by "one sovereign" (the state) does not trigger the constitutional speedy trial clock for "another [separate] sovereign" (the federal government). *MacDonald*, 456 U.S. at 10 n.11. But that "doctrine of separate sovereigns 'has no application [in the District], since the (federal) statute and the District of Columbia Code have both been enacted by the same sovereign—the federal government.'" *United States v. Greene*, 489 F.2d 1145, 1165 n.29 (D.C. Cir. 1973) (quoting *United States v. Canty*, 469 F.2d 114, 128 n.20 (D.C. Cir. 1972)). So, unlike state prosecutions, the Constitution's speedy trial clock begins at arrest or indictment for either a federal or D.C. Code violation. *Mills*, 964 F.2d at 1193.

In its briefing, the Government appears to resist that it should be treated as a unified sovereign for purposes of arrests in this District. *Compare* Objections 15 n.6, *with* Objections 13. It has also repeatedly suggested that the Court should consider the functional differences between this District and dual-sovereignty jurisdictions and interpret the Sixth Amendment more solicitously to the Government here. Mot. Hr'g. Tr. 23:9–17, 40:24–25, 41:1. To be clear, the D.C. Circuit has recognized that the District of Columbia is a unified sovereign for the Sixth Amendment analysis. *See Mills*, 964 F.2d at 1193 (recognizing the District's "unified sovereignty"). And contrary to the Government's suggestion, prudential reasons do not justify

---

[6] The D.C. Circuit has long held that the District and the federal government are not separate sovereigns for constitutional purposes and therefore, successive prosecutions for D.C. Code and federal offenses can be barred by the Fifth Amendment's Double Jeopardy Clause. *See Sumler*, 136 F.3d at 191; *United States v. Shepard*, 515 F.2d 1324, 1331 (D.C. Cir. 1975); *United States v. Knight*, 509 F.2d 354, 360 (D.C. Cir. 1974); *United States v. Greene*, 489 F.2d 1145, 1165 n.29 (D.C. Cir. 1973); *United States v. Canty*, 469 F.2d 114, 128 n.20 (D.C. Cir. 1972); *cf. Robertson*, 810 F.2d at 257 (recognizing the District "most assuredly is not" a separate sovereign).

applying the Sixth Amendment any differently in this case than any other instance when "the Government dismiss[es] charges pending in one district in order to prosecute the defendants on those same charges in another district." *MacDonald*, 456 U.S. at 7 n.7.

"The dual sovereignty doctrine provides that 'the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible." *United States v. Marler*, 756 F.2d 206, 211 (1st Cir. 1985) (quoting *United States v. Mejias*, 552 F.2d 435, 441–42 (2d Cir. 1977)). The doctrine is founded in "[c]ommon sense, as well as deeply rooted concepts of federalism." *United States v. Homaune*, 898 F. Supp. 2d 153, 167 (D.D.C. 2012) (quoting *United States v. Shahryar*, 719 F.2d 1522, 1525 (11th Cir. 1983)).

"[I]n our federal system the State and Federal Governments have legitimate, but not necessarily identical, interests in the prosecution of a person for acts made criminal under the laws of both." *Rinaldi v. United States*, 434 U.S. 22, 28 (1977). "[T]he doctrine of dual sovereignty" protects these interests by ensuring each sovereign "is not bound by the actions" of the other. *Homaune*, 898 F. Supp. 2d at 167 (quoting *Shahryar*, 719 F.2d at 1525). As the First Circuit has explained:

> [If] [the] state court indictment triggered [the] speedy trial right, we would in effect be requiring the federal government to keep continually abreast of all state criminal investigations that may present the possibility of federal prosecution and to pursue their own investigations, arrests, indictments, and trials so as to conform with state-dictated timing. This is obviously counter to the dual sovereignty doctrine as well as to effective, responsible law enforcement. *See Abbate v. United States*, 359 U.S. 187, 193 (1959) ("[I]f the States were free to prosecute criminal acts violating their laws, and the resultant state prosecutions bar federal law enforcement based on the same acts, federal law enforcement must necessarily be hindered")[;] [*s*]*ee also United States v. Lovasco*, 431 U.S. 783, 795, (1977) ("Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refused to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed.'").

*Marler*, 756 F.2d at 211.

But these considerations play little role in this District where "prosecutors do not derive their powers to prosecute from independent sources of authority." *See Puerto Rico v. Sánchez Valle*, 579 U.S. 59, 72 (2016) (cleaned up). Indeed, the District of Columbia lacks "independent prosecutorial power." *Id.* at 74. Decisions to initiate criminal prosecutions under either District or federal law are made by the same entity—the U.S. Attorney for the District of Columbia. *Knight*, 824 F.3d at 1109. The laws enforced by these prosecutors are established by federal statute or through powers "delegated by Congress through federal statutes." *Sánchez Valle*, 579 U.S. at 72. Concerns that the U.S. Attorney may be improperly prejudiced or hurried by "local arrests and prosecutions over which they have no control and but limited influence" are unfounded. *United States v. Mills*, 925 F.2d 455, 460 (D.C. Cir. 1991), *aff'd in part on reh'g*, 964 F.2d 1186 (D.C. Cir. 1992) (en banc). Since the only party affected is the "same sovereign"—*i.e.*, the "federal government," nothing counsels hesitation in giving the Sixth Amendment its full effect in this proceeding. *Greene*, 489 F.2d at 1165 n.29 (quoting *Canty*, 469 F.2d at 128 n.20).

Furthermore, the speedy trial guarantee's "teeth come from threatening the sovereign—that is, the Federal Government—with dismissal in cases of unsanctioned delay." *See Homaune*, 898 F. Supp. 2d at 167 (discussing the federal Speedy Trial Act). When delays are attributable to a separate sovereign, dismissal is unwarranted because the federal government does not "control" its state counterparts and so there is no deterrent effect. *Id.* Thus, courts do not apply speedy trial protections in those cases. *Id.* But again, that rationale is inapplicable here as the U.S. Attorney "control[s]" the prosecutors who try both federal and D.C. crimes. *Id.* And abuse of prosecutorial control is the constitutional concern the Sixth Amendment's Speedy Trial Clause seeks to deter. *See Strunk v. United States*, 412 U.S. 434, 438 (1973).

In any event, the Supreme Court has rejected the idea that "functional" arguments justify loosening constitutional protections that hinge on unified sovereignty. *Sánchez-Valle*, 579 U.S. at 71. An entity is not necessarily a separate sovereign even if it is granted a "degree of autonomy and independence normally associated with States," "home-rule," "power to enact criminal ordinances," or "exercise autonomous control over criminal law and other local affairs." *Id.* at 71, 74–75 (cleaned up). It follows then that the U.S. Attorney, who is neither independent nor autonomous from the federal government, cannot shirk her speedy trial responsibilities as the sole authority controlling prosecutors in this District. *See United States v. Liddy*, 542 F.2d 76, 79 (D.C. Cir. 1976) ("[F]ederal authorities cannot be allowed to circumvent the speedy trial requirements of the Sixth Amendment by manipulating the state criminal processes before the initiation of federal prosecutorial proceedings.").

In sum, the Government provides no persuasive reason why the Sixth Amendment should not be given its full effect here. And considering that Rule 48(b) "places a[n] [even] stricter requirement of speed on the prosecution," that Rule's safeguards also apply with equal force. *Mathies v. United States*, 374 F.2d 312, 314–15 (D.C. Cir. 1967).

## B.    *Barker* Factors

The Court now turns to the *Barker* factors that are used to analyze delay under Rule 48(b) and the Sixth Amendment: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. 407 U.S. at 530.

### 1.    Length of Delay

When looking at the Sixth Amendment alone, the first *Barker* factor focuses on the "interval between accusation and trial." *Doggett*, 505 U.S. at 651. But Rule 48(b) gives courts "discretion to dismiss" for "unnecessary delay" in reaching either the "indictment or trial." *United*

*States v. Peters*, 587 F.2d 1267, 1270 n.6 (D.C. Cir. 1978); *see* Fed R. Crim. P. 48(b)(1) (permitting dismissal for "unnecessary delay" in "presenting a charge to a grand jury"). The relevant question under this factor is whether the delay "was uncommonly long." *Doggett*, 505 U.S. at 651.

### a.  Starting Point of the Analysis

The length of the delay under *Barker* is measured from the time the accused faces "restraints imposed by arrest," "holding to answer a criminal charge," or "indictment." *Marion*, 404 U.S. at 320; *see also Doggett*, 505 U.S. at 655 (clock is "triggered by arrest, indictment, or other official accusation").[7] And "the period between arrest and indictment must be considered in evaluating a . . . claim." *MacDonald*, 456 U.S. at 7 (citing *Dillingham v. United States*, 423 U.S. 64 (1975)).[8] Accordingly, the Court agrees with and adopts Judge Faruqui's finding that the delay must be measured from the date of Mr. Gaffney's arrest—June 25, 2025. R. & R. 8 (the date of "actual restraint").

### b.  Effect of Dismissal and Reindictment

It is hard to pin down whether the Government agrees that June 25, 2025, is the proper start date for the delay clock. It questions whether Mr. Gaffney's arrest triggered the Sixth Amendment clock here, *see* Objections 15 n.6, even while using Mr. Gaffney's date of arrest as the relevant starting point for its own *Barker* analysis, Objections 15. But the Government offers no other

---

[7] For purposes of the Sixth Amendment, "[a]rrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Marion*, 404 U.S. at 320.

[8] The Government, at times, suggests that only the Due Process Clause is implicated here because this case primarily concerns pre-indictment delay. Mot. Hr'g Tr. at 16:7–15. But the Supreme Court has held that pre-indictment delay factors into the Sixth Amendment inquiry beginning at arrest. *Dillingham v. United States*, 423 U.S. 64, 65 (1975). That said, it is true that the Court has also said that "delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment." *MacDonald*, 456 U.S. at 7.

potential start date. The Court notes that the U.S. Attorney's Office has long "conceded" in litigation that the "Sixth Amendment analysis would comprehend the entire time span from [a defendant's] indictment in Superior Court to the dismissal of the federal charges against them, given that the same federal prosecutors controlled both prosecutions." *Mills*, 925 F.2d at 464–65, *aff'd in part on reh'g*, 964 F.2d 1186.[9] If the clock does not run from the date of the District arrest,

---

[9] In *Robertson*, the D.C. Circuit held that the federal Speedy Trial Act clock does not start with an arrest and indictment in D.C. Superior Court for a D.C. Code offense. *United States v. Robertson*, 810 F.2d 254 (D.C. Cir. 1987). Nevertheless, questions persisted—largely because the Supreme Court in *McDonald* suggested that the Sixth Amendment's clock could encompass the period when "the Government dismissed charges pending in one district in order to prosecute the defendants on those same charges in another district." 456 U.S. at 7 & n.7.

In *Mills*, defendants again challenged pretrial delays from these transfers under the Speedy Trial Act, Due Process Clause, and Speedy Trial Clause. *United States v. Mills*, 925 F.2d 455, 457 (D.C. Cir. 1991). The district court considered the plaintiffs' constitutional claims under the Due Process Clause but did not reach the Sixth Amendment. *Id.* at 465. On appeal, a panel of the D.C. Circuit held that the "Sixth Amendment analysis would comprehend the entire time span from the appellees' indictment in Superior Court to the dismissal of the federal charges against them, given that the same federal prosecutors controlled both prosecutions." *Id.* at 464–65. But the court held that *Robertson* constrained its statutory analysis. *Id.* at 461. The panel remanded the case to the district court so it could apply the Sixth Amendment using the "balancing test prescribed by the Supreme Court in *Barker*." *Id.* at 465.

The D.C. Circuit granted rehearing *en banc* to determine whether *Robertson* should be reconsidered in light of the growing constitutional jurisprudence to the contrary. *United States v. Mills*, 964 F.2d 1186 (D.C. Cir. 1992) (en banc). The Circuit largely declined to overrule *Robertson*'s statutory holding. *Id.* at 1193. It recognized that *MacDonald* suggested that an arrest under the D.C. Code started the constitutional speedy trial clock for the U.S. Attorney. *Id.* at 1192 (citing *MacDonald*, 456 U.S. at 10 n. 11). But it declined to give the statute "an interpretation parallel to the Sixth Amendment"—especially because "*MacDonald post-dates* the passage of the Speedy Trial Act" and was therefore unlikely to "inform[] congressional intent." *Id.* at 1193. Instead, like in *Robertson*, the Circuit held that the statute's legislative history affirmed that the Act was inapplicable in this circumstance. *Id.* Still, the court agreed that D.C. Code arrests triggered an inquiry under the Sixth Amendment and affirmed the panel's remand to consider the constitutional inquiry. *Id.* (citing *Mills*, 925 F.2d at 464–65).

The Government misapprehends *Mills.* The Government acknowledges that the *en banc* court left intact the panel's holding on the Sixth Amendment. Objections 15 n.6. But it then suggests that the *en banc* court's conclusion that a D.C. arrest starts the Sixth Amendment clock must be *dicta*. *Id.* This is illogical. The panel concluded that the Sixth Amendment clock began at an arrest on the D.C. charge because both prosecutions were conducted by one sovereign. *Mills,* 925 F.2d at 464–65. And the remand was not, as the Government suggests, to consider in the first instance

the implications of such a holding would be dire—the "U.S. Attorney [would have] unlimited discretion to transfer cases from Superior Court months, even years after the initial arrest." *Mills*, 964 F.2d at 1193 (quoting Brief of Amici Curiae at 12). Such an approach "ignores the Sixth Amendment's role." *Id.*

Undoubtedly, the start date cannot be the date of dismissal and reindictment. When "the Government, *acting in good faith*, formally drops charges" and later reindicts a defendant, it is true that courts are to exclude the period after dismissal of the initial charge and reindictment. *MacDonald*, 456 U.S. at 7 & n.7 (emphasis added). But this rule does not extend to the "unusual" circumstance presented here, where "the Government dismissed charges pending in one [forum] in order to prosecute the defendant[] on those same charges in another [forum]." *Id.* at 7 n.7. In this situation, the good-faith rule does not toll the time, and the length of the delay is measured from the initial arrest or charge. *See United States v. Lara*, 520 F.2d 460, 464 (D.C. Cir. 1975). The time is also not tolled when the defendant remains incarcerated after the charges are dropped or during the pendency of the transfer. *See United States v. Dunn*, 459 F.2d 1115, 1121 (D.C. Cir. 1972) (citing *Smith v. Hooey*, 393 U.S. 374 (1969); *Williams v. United States*, 250 F.2d 19 (D.C. Cir. 1957)). And it certainly cannot be tolled in the situation here where there is simply no "period between the dismissal and the reinstatement" of the charge. *See MacDonald*, 456 U.S. at 7 n.7.

Indeed, Mr. Gaffney's indictment was returned four days before—not after—his D.C. Superior Court case was dismissed. *See* Indictment, ECF No. 1 (September 12, 2025); Minute

---

whether the Sixth Amendment was implicated. Rather, the district court was given strict instructions to apply the "balancing test prescribed by the Supreme Court in *Barker*"—a remand that makes sense only if the Sixth Amendment clock was implicated. *Mills,* 925 F.2d at 465. The *en banc* court left this remand intact and reiterated the applicability of the Sixth Amendment. *Mills*, 964 F.2d at 1193. Both the *en banc* and panel decisions plainly held that a D.C. Code arrest triggers the Sixth Amendment analysis. *Id.*; *Mills,* 925 F.2d at 464–65.

Entry, Sept. 16, 2025, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. 2025)

(dismissal). There was no change in his incarceration. Ctd. Det. Hr'g Tr. 5:15–20, ECF No. 22.

On this question, Judge Faruqui's findings are insightful:

> The D.C. Superior Court's "release" after the government's dismissal of its case
> was meaningless. Gaffney was immediately federally "re-detained" without
> leaving the D.C. Jail. In fact, he continued to occupy the same exact cell during this
> supposed "release" and "re-detention." *See* Det. Hrn'g. (Oct. 9, 2025). Thus,
> Gaffney's "actual restraint" dates back to his June 25, 2025 arrest.

R. & R. 8. The Court agrees. Undoubtedly, the length of the delay runs from the date of

Mr. Gaffney's arrest.

### c.   Length and Unusualness of the Delay

Turning to the length of the delay in this case, the relevant interval for Rule 48(b)(1) is that

between arrest and presenting the charge to the grand jury. Mr. Gaffney was arrested on June 25,

2025. The U.S. Attorney's Office initially presented his charge to a grand jury on September 5,

2025. And a grand jury indicted him on September 12, 2025. Thus, the time between his arrest and

initial presentment to the grand jury was 73 days. And the time between his arrest and indictment

was 80 days.[10] Had he been initially charged federally in this Court, the Government would have

had only 30 days to secure an indictment. 18 U.S.C. § 3161(b).[11]

In assessing the delay, it is impossible "to quantify" the length of impermissible delay "into

a specified number of days or months," *Brillon*, 556 U.S. at 89–90 (cleaned up), and the Supreme

---

[10] At this point, Mr. Gaffney has been awaiting trial for 136 days, having been transferred to this
Court on September 16, 2025, after 84 days of incarceration on the D.C. Superior Court charges.
Had Mr. Gaffney remained in D.C. Superior Court, his trial would have begun on October 2, 2025.
See Minute Entry, July 7, 2025, *United States v. Gaffney*, 2025-CF2-00719 (Sup. Ct. D.C. 2025).

[11] The Court is not moved by the fact that the Government could have sought extensions or
proceeded by Complaint. Objections 12 n.5. The *Barker* analysis focuses on the "peculiar
circumstances of the case" and the unusualness of the delay. *Barker*, 407 U.S. at 531. The Court
sees no reason why the Government would have received extensions in this simple case.

Court has warned this first factor should not be read as "establishing a statute of limitations," *United States v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555, 565 (1983).[12] "Little can be said on when a delay becomes presumptively improper, for the determination is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31.[13]

The relevant question under this factor is whether the delay "was uncommonly long," *Doggett*, 505 U.S. at 651, which can be answered only "on an ad hoc basis," *Barker*, 407 U.S. at 530. An important consideration is the complexity of the case. *Id.* at 530–31. For instance, "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. And a proceeding involving a single defendant should proceed

_____

[12] To find a Sixth Amendment violation, the Supreme Court has suggested that delay must exceed the "bare minimum needed to trigger judicial examination"—*i.e.*, a delay exceeding that of a case proceeding with "customary promptness." *Doggett*, 505 U.S. at 652. When examining delays that do not necessarily amount to a Sixth Amendment violation, "the flexible approach of *Barker* . . . necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Eight Hundred & Fifty Dollars*, 461 U.S. at 565 (cleaned up). Even unusual "short delays" of "a month" require some justification. *Id.* And it is important to keep in mind no factor is "either a necessary or sufficient condition" to find impermissible delay under *Barker*. 407 U.S. at 533.

[13] The Government argues otherwise, suggesting that a "one year delay [is] necessary to trigger a Sixth Amendment speedy trial analysis." Gov't Supp. 5. But the Government's citations do not support that proposition. It is true that courts have found a one-year delay sufficient to presume prejudice under the *Barker* analysis. *United States v. Ransom*, 465 F.2d 672, 673 (D.C. Cir. 1972) (per curiam) ("[A] delay of more than one year between arrest and trial [gives] 'prima facie merit' to a Sixth Amendment challenge."); *Doggett*, 505 U.S. at 652 n.1 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."). But nothing supports treating the first factor as a statute of limitations. In fact, courts have found that delays of less than one year are cognizable and even presumptively prejudicial. *See United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir. 1986) ("[W]e found that a six month delay of trial on forgery charges was a 'borderline case' sufficient to trigger an inquiry into the remaining three factors." (citing *United States v. Simmons*, 536 F.2d 827, 831 (9th Cir. 1976)); *United States v. Woolfolk*, 399 F.3d 590, 598 (4th Cir. 2005) ("[I]t may generally be said that any delay of eight months or longer is presumptively prejudicial." (citation omitted)). And the Government's reasoning makes little sense in the context of Rule 48(b)(1), which concerns pre-indictment delay—instead of delay to trial—which obviously involves a shorter time period. Indeed, the federal Speedy Trial Act gives prosecutors less than half the time to bring an indictment than it does to bring a case to trial. *Compare* 18 U.S.C. § 3161(b), *with* 18 U.S.C. § 3161(c)(1).

more quickly than one with multiple defendants. *Cf. id.* The length of the delay justifies

consideration of the other factors when it is shown the Government has not "prosecuted [the] case

with customary promptness." *Doggett*, 505 U.S. at 652.

Mr. Gaffney was charged with "a run-of-the-mill felon-in-possession case." R. & R. 6. The

Government conceded that it collected all its evidence prior to initiating his case in D.C. Superior

Court. Opp'n 10, ECF No. 13. Indeed, the quantity of the evidence was minimal. *See* Response,

Ex. 1, ECF No. 20–1; Mot. Hr'g Tr. 14:12–25, 15:14–25, 16:1. For the grand jury presentation,

the Government relied on one witness, five photographs, a seized weapon, and about eight minutes

of body-camera footage. *Id.* The Court agrees with and adopts Judge Faruqui's finding that "[t]his

is about the simplest case you can have in federal court." R. & R. 6.

Having determined the complexity (or rather simplicity) of the case, the next question is

whether the delay here "was uncommonly long" in those circumstances. *Doggett*, 505 U.S. at 651.

At least as to this factor, the Government concedes as much in its briefing:

> [T]he Government acknowledges that, in relatively straightforward cases like this
> one, the Government usually identifies cases for transfer earlier than it did here
> (approximately 15 days after arrest) and federal grand jury indictments in such
> cases are usually returned in a shorter period than occurred here (approximately 67
> days after the case was identified for transfer).

Objections 12. And the Government said the same at argument. Mot. Hr'g Tr. at 15:7–9 ("THE

COURT: You think it takes this long to bring this simple of a case to the grand jury? [THE

GOVERNMENT]: I don't, Your Honor."); Mot. Hr'g Tr. at 33:16–18 ("The particular delay in

this case is out of the ordinary, Your Honor. It absolutely is. We acknowledge that in our brief.").

In light of the Government's concession, the Court has no difficulty concluding that the delay in

this case is "uncommonly long." *Doggett*, 505 U.S. at 651.

Of course, like any *Barker* factor, failing to proceed "with customary promptness" does

not itself demonstrate unnecessary or constitutionally deficient delay. *Id*. Rather, the Court turns

to the other *Barker* factors to examine if the delay is justifiable, *id.*, as delay alone is not necessarily

a sufficient condition to dismiss a case, *see Barker*, 407 U.S. at 534. Even a very substantial delay

may be permissible if it is justified by the other factors. *See Dunn*, 459 F.2d at 1120.

### 2.    Reason for the Delay

For the second factor, courts ask "whether the government or the criminal defendant is

more to blame for th[e] delay." *Brillon*, 556 U.S. at 90 (alteration in original) (quoting *Doggett*,

505 U.S. at 651). And "different weights should be assigned to different reasons." *Id.* (quoting

*Barker*, 407 U.S. at 531). *First*, "it is improper for the prosecution intentionally to delay 'to gain

some tactical advantage over (defendants) or to harass them.'" *Barker*, 407 U.S. at 531 n.32

(quoting *Marion*, 404 U.S. at 325)). A delay with "no valid reason" or "exclusively for the

convenience of the" prosecutor is "intolerable as a matter of fact and impermissible as a matter of

law." *Dickey v. Florida*, 398 U.S. 30, 38 (1970). And a "purpose to secure delay itself or some

other procedural advantage," *Lara*, 520 F.2d at 464, "will be weighed heavily against the

government" and make it likely the defendant "would prevail," *Doggett*, 505 U.S. at 656. *Second*,

"negligence is obviously to be weighed more lightly" than "deliberate" delay, but "it still falls on

the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal

prosecution once it has begun." *Id.* at 657. *Third*, delays arising from administrative constraints

such as "[c]rowded dockets" or "the lack of judges or lawyers," *Dickey*, 398 U.S. at 38, are

"weighed less heavily" than other reasons, *Loud Hawk*, 474 U.S. at 315 (cleaned up).

It is clear that proffering "no valid reason" is also impermissible. *Dickey*, 398 U.S. at 38.

The Government has a burden to justify prolonged delay. *See United States v. Brown*, 520 F.2d

1106, 1110 (D.C. Cir. 1975) (Rule 48(b) and the Sixth Amendment); *Nickens*, 323 F.2d at 814

(Wright, J., concurring). The Government cannot escape its speedy trial obligations by

complaining that the defendant was simply "lost in the shuffle." *Dunn*, 459 F.2d at 1121. And under Rule 48(b), the delay weighs strongly against the Government when "the prosecution was conducted with such disregard of [a defendant's] interests that it can be said that the delay resulted from deliberate, or at least negligent, actions on the part of the prosecutor." *Hanrahan*, 348 F.2d at 368.

The burden on the Government to explain its delay is just as heavy when the delay is caused by "shutt[ling]" the Defendant between two venues. *Lara*, 520 F.2d at 464–65 (Government dismissing indictment in this District and re-indicting in Florida did not justify delay when "reasons advanced" for such a transfer were "insubstantial"); *see also Mills*, 925 F.2d at 464–65 (portion of panel opinion in *Mills* affirmed *en banc* treating similarly (1) dismissing in D.C. Superior Court and re-indicting for same conduct in federal district court and (2) the conduct in *Lara*); *Hanrahan*, 348 F.2d at 368 (vacating district court's denial of Rule 48(b) motion after Government dismissed indictment in Puerto Rico and re-indicted in this District and remanding to district court to evaluate, *inter alia*, if "all the delay attributable to the prosecutor was necessary for fair and just prosecution"), *cf. United States v. Bishton*, 463 F.2d 887, 890–91 (D.C. Cir. 1972) (Government re-indicting in federal district court after D.C. court indictment was dismissed on procedural technicality did not violate Sixth Amendment because there was no evidence the Government "must have known" it would not prevail in the D.C. courts causing the delay).

Here, the Government decided to shuttle Mr. Gaffney from D.C. Superior Court to federal court on July 10, 2025, fifteen days after his arrest. Objections 12. It provided no explanation for

waiting fifteen days to make that decision.[14] At that point, the Government "must have known" that any further delay prosecuting Mr. Gaffney in federal court would unnecessarily prolong his pretrial detention. *See Bishton*, 463 F.2d at 891. Yet, after making the decision to transfer the case, the Government then waited until September 5, 2025, to first present the charge to the grand jury, which did not return a federal indictment until September 12, 2025. Response, Ex. 1; Mot. Hr'g Tr. 12:17–25. Once again, the Government provided no reason for that lengthy period.[15] All the while, Mr. Gaffney had a trial date "set" for October 2, 2025, and was prepared to go forward then. *Lara*, 520 F.2d at 465 (placing emphasis on a set trial date in the inquiry).[16] On September 16, 2025, Mr. Gaffney had his first appearance in this Court, where the pretrial detention process restarted for him—seventeen days before his trial was set to begin in Superior Court. *See* Minute Entry, Sept. 16, 2025.

Throughout this entire time, Mr. Gaffney remained incarcerated. *Id.* The Government admits that it has no reason for the extended delay. Mot. Hr'g Tr. at 15:2–6 ("I am not giving any—beyond the one-week delay."). Such delay was not necessary or inherent for the administrative process as the Government freely admits it "usually identifies cases for transfer

---

[14] The Government agrees that this fifteen-day delay was out of the ordinary. Objections 12. It proffers that there is "isn't much for us to say"—chalking the delay up to ad hoc inefficiencies in communications between different prosecutors and law enforcement. Mot. Hr'g Tr. at 4:6–8. Such "negligence" is still weighed against the Government under *Barker* and "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657

[15] The Government notes that it suffered a week-long delay in securing an indictment from the grand jury because it started its presentation on September 5, 2025, but did not conclude until September 12, 2025. Such administrative delay would not be weighed heavily in the *Baker* analysis. *Loud Hawk*, 474 U.S. at 316. But the Court need not consider it in any event given the other delays discussed.

[16] *See* Minute Entry, July 7, 2025, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. 2025); Response 8.

earlier than it did here" and "grand jury indictments in such cases are usually returned in a shorter period than occurred here." Objections 12. Deliberate or not, the delay was "exclusively for the convenience of the" Government. *Dickey*, 398 U.S. at 38. The Government admits that it had more than double the time to secure an indictment as it would have had if it commenced the case in federal court to begin with, Mot. Hr'g Tr. at 18:4–6—time the U.S. Attorney's Office could reallocate to other cases, advanced trial preparation, or other tasks. Critically, the Government admits, as it must, that the time was not "to the benefit of Mr. Gaffney." Mot. Hr'g Tr. at 24:1–3.

Furthermore, there is some evidence that the Government gets "procedural advantage" out of parking defendants in D.C. Superior Court while waiting to decide whether to bring a federal charge. *Lara*, 520 F.2d at 464 (quoting *Bishton*, 463 F.2d at 890). As the Government itself explained at oral argument, the standard for pretrial detention is more favorable to the Government in D.C. Superior Court. Mot. Hr'g Tr. at 20:9–13 ("[I]n superior court, unlike in district court, there is a presumption in favor of detention with the particular charge here."); *see also* D.C. Code §23-1322(c)(7). Considering the Sixth Amendment's core concern with "undue . . . incarceration prior to trial," *Betterman*, 578 U.S. at 442 (citation omitted), the Court is all the more concerned that the Government effectively has no justification for the necessity of the delay, *Brown*, 520 F.2d at 1113.

While this Court need not decide whether the delays here are "due to [either] neglect or design on the part of those responsible for bringing the case to trial," it is evident that the Government's "burden of responsibility was not met in [this] particular case." *Brown*, 520 F.2d at 1113. After it charged Mr. Gaffney in Superior Court and successfully sought his detention there, the Government chose to shuttle him to federal court and waited 73 days to begin the grand jury process and 80 days to conclude it—a delay it has made no attempt to explain. Such a delay

demonstrated a total "disregard" for Mr. Gaffney's presumed innocence, his request to speedily vindicate his right to a trial, and the prolonged deprivation of his liberty he endured in pretrial incarceration. *Hanrahan*, 348 F.2d at 368. The delay has "no valid reason" and only "convenience[d]" the prosecutor. *Dickey*, 398 U.S. at 38.

* * *

On this factor, the Court asks whether the Government's reasons "justify appropriate delay." *Barker*, 407 U.S. at 531. The Government can barely muster any reason at all. And as to the interval between identifying the case for transfer and presenting the charge to the grand jury specifically, the Government admits that it cannot justify the delay: "I am not saying that those two reasons justify the 67-day delay." Mot. Hr'g Tr. at 36:11–25–37:1–7 (discussing inherent delay and grand jury proceedings). Undoubtedly the Government, not Mr. Gaffney, "is more to blame for the delay" in this case. *Brillon*, 556 U.S. at 81 (cleaned up).[17] This factor therefore weighs heavily against the Government.

### 3.    The Defendant's Assertion of His Right

Turning to the third factor, the Court fully adopts and agrees with Judge Faruqui's analysis. R. & R. 13. The Government does not dispute that determination on this factor. Objections 17. Mr. Gaffney has repeatedly asserted his right to a speedy trial throughout these proceedings. This was true in the Superior Court. *See* Minute Entry, July 7, 2025, *United States v. Gaffney*, 2025-CF2-007119 (Sup. Ct. D.C. 2025). And his assertion continued after the case was transferred to this Court. *See* Mot. Dismiss 5. Such continual assertion of the speedy trial right "is entitled to

---

[17] The Court need not consider Mr. Gaffney's motions to suppress evidence when measuring pre-indictment delay. Such motions are commonly charged against the defendant. But the D.C. Superior Court motion caused no delay because the case was transferred the same day. And the federal suppression motion was filed after the indictment and so plays no role in the Rule 48(b)(1) inquiry. Mot. Suppress, ECF No. 11.

strong evidentiary weight in determining whether the defendant is being deprived of" a speedy trial. *Barker*, 407 U.S. at 531–32. Accordingly, this factor, too, weighs heavily against the Government.

### 4.    Prejudice to the Defendant

Under the final factor, courts consider prejudice in light of the Government's duty to: (i) "limit the possibility that the defense will be impaired," (ii) "minimize anxiety and concern of the accused," and (iii) "prevent oppressive pretrial incarceration." *Barker*, 407 U.S. at 532.

The Government objects to Judge Faruqui's determination that Mr. Gaffney suffered prejudice under *Barker* without an affirmative showing of an evidentiary prejudice to his defense. Objections 19–20.[18] Although evidentiary prejudice makes for a strong showing of constitutional deprivation, it is not a necessary (or even sufficient) condition to satisfy *Barker*. 407 U.S. at 532–33. And the Supreme Court has held a defendant need not make an affirmative showing of evidentiary prejudice to succeed under the inquiry. *Doggett*, 505 U.S. at 657 ("[N]either is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him[.]"). *Barker* expressly identifies multiple forms of cognizable prejudice. 407 U.S. at 532–33.

Indeed, "the Speedy Trial Clause's core concern is impairment of liberty" through pretrial detention. *Loud Hawk*, 474 U.S. at 312. The D.C. Circuit has held that pretrial incarceration alongside anxiety and concern can be enough to demonstrate prejudice under both the Sixth Amendment and Rule 48(b). *Brown*, 520 F.2d at 1112 (affirmative showing of evidentiary prejudice is unnecessary where other forms of "personal prejudice" are demonstrated). As Justice

---

[18] The Court uses the term evidentiary prejudice to refer to prejudice that may impair one's defense as identified in *Barker*. 407 U.S. at 532.

Thomas suggested, the Speedy Trial "Clause is directed not generally against delay-related prejudice, but against delay-related prejudice to a defendant's liberty." *Doggett*, 505 U.S. at 661 (Thomas, J., dissenting); *see also Marion*, 404 U.S. at 320 ("[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.").

Thus, the Court agrees with and adopts Judge Faruqui's Report and Recommendation on this subject. R. & R. 13–14. Mr. Gaffney has endured months of unnecessary pretrial detention at the D.C. Jail, which has undoubtedly caused him harm. *See United States v. Akers*, No. 11-cr-313, 2025 WL 2611703, at *3 (D.D.C. Sept. 10, 2025). The Jail currently suffers "rising deaths, structural decay, staff shortages, and inadequate medical and behavioral health care." *Id.* (citation omitted). The Jail's main compound, which opened in 1976, is decaying and "ridden with cockroaches, mice and mold." *Id.* (citation omitted). There are various health and safety risks, including "toilet water commingled with feces spewing onto residents and their living areas" and "extreme heat or cold due to poor climate-control systems." *Id.* (citation omitted). And "[t]he rate of death at the D.C. [J]ail is three times the average of U.S. jails." *Id.* (citation omitted). The Government's conduct needlessly extended Mr. Gaffney's confinement in these conditions, which constituted "oppressive pretrial incarceration." *Barker*, 407 U.S. at 532.

But that is not all. The anxiety and concern of a defendant who is incarcerated and faces the prospect of future transfer for re-indictment has been documented in detail by both the D.C. Circuit and the Supreme Court:

> [I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a [term] with the uncertain prospect of being taken into the custody of another [court] at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement.

*Brown*, 520 F.2d at 1112 (quoting *Smith*, 393 U.S. at 379). By restarting his prosecution in federal court when Mr. Gaffney was well down the road to having his day in court, the Government inflicted on Mr. Gaffney uncertainty about when his opportunity to mount a defense would arrive—anxiety not faced by a typical pretrial detainee. *See Strunk*, 412 U.S. at 439 ("The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial [.]")

* * *

The *Barker* factors all weigh in favor of Mr. Gaffney. The delay in this case was uncommonly lengthy and solely convenienced the Government. The Government provides no reason whatsoever to justify the lion's share of the delay. Indeed, it concedes that its reasons do not explain the length of time it took to obtain a federal indictment. Mr. Gaffney, meanwhile, has consistently and continuously asserted his speedy trial rights and has been prejudiced by the delay.

Taken together, the delay in this case raises serious constitutional concerns. But it is well established that courts "ought not to pass on questions of constitutionality unless such adjudication is unavoidable." *Matal*, 582 U.S. at 231 (cleaned up); *see also Jean v. Nelson*, 472 U.S. 846, 854 (1985) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."). And here, the Court need not decide whether the Government has violated Mr. Gaffney's constitutional rights because Congress has provided another mechanism for the Court to enforce the speedy trial guarantee: Rule 48(b).

## C.    Rule 48(b)

Rule 48(b) permits federal district courts to dismiss an indictment "if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or

(3) bringing a defendant to trial." When making this assessment, the Court may consider whether the delay was arbitrary or prejudicial. *Mathies*, 374 F.2d at 315. The fundamental question is whether, given the circumstances of this case, the delay was "unnecessary." Fed. R. Crim P. 48(b). Here, the Court finds that the Government's 73-day delay in "presenting a charge to a grand jury" warrants the Court exercising its discretion under Rule 48(b)(1).[19]

As discussed above, all four *Barker* factors indicate that the Government's 73-day pre-presentation delay was unusual, unjustified, and prejudicial. *See Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 530). That delay is entirely attributable to the conduct of the U.S. Attorney. *Id.* When a delay is unusually long, the relevant evidence "was in the hands of the government" at the time of arrest, and the Government fails "to offer any reason for the delay," a court can easily conclude Rule 48(b) dismissal is warranted. *United States v. Cooper*, No. 86-cr-422, 1987 WL 9508, at *1 (D.D.C. Apr. 6, 1987). In this case, not only are those factors all present, but the Government expressly disavows the argument that this delay was necessary: "I am not making the point that that delay needed to be the delay that we had here." Mot. Hr'g Tr. at 36:12–14. So, the Court need not hesitate in finding the delay here "unnecessary." Fed. R. Crim P. 48(b).

### 1.    Dismissal

Turning to the appropriate remedy, the Government asks the Court to stop short of dismissal and instead release Mr. Gaffney from pretrial detention. Opp'n 17. But the Supreme Court has expressly rejected such an approach in the Sixth Amendment context, finding that release does not adequately "deal with the[] difficulties" imposed on individuals who are denied their right to a speedy trial. *See Strunk*, 412 U.S. at 438–40 (rejecting release as an appropriate

---

[19] The delay is measured from the date of arrest (June 25, 2025) to the date the Government began its presentation to the grand jury (September 5, 2025). The Court need not consider the additional seven-day delay by the grand jury in finding a violation of Rule 48.

remedy for a Sixth Amendment violation and finding that "[i]n light of the policies which underlie the right to a speedy trial, dismissal must remain . . . the only possible remedy" (cleaned up)). And the Court finds that reasoning equally applicable here. On this record, release is not a viable alternative. The Court therefore dismisses the indictment.

Congress limited a federal district court's ability to release a defendant from pretrial detention in the Bail Reform Act of 1984, which does not provide for release solely for pretrial delay. 18 U.S.C. § 3142(g)(1)–(4). Both the Government and Judge Faruqui agree that statute mandates pretrial detention. Mot. Hr'g Tr. at 34:16–20. But the Government asks this court to abrogate this legislative command and release Mr. Gaffney to soothe the friction between the U.S. Attorney Office's prosecutorial conduct and the Sixth Amendment. Objections 11 ("[T]he Bail Reform Act must yield to the Constitution."). Instead of that prohibited route, Congress has already authorized a proper remedy for unnecessary delays implicating Sixth Amendment concerns—Rule 48(b) dismissal. *Mann*, 304 F.2d at 398 (noting the Rule can be used to dismiss for both constitutional and non-constitutional reasons). The Court cannot entertain the Government's suggestion to needlessly "pass on a statute's constitutionality." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 213 (2009).

The Government also asks this Court to set an earlier trial date as a remedy for its unnecessary delays rather than dismissing the case. Objections 12. But the Constitution guarantees "orderly expedition and not mere speed." *Smith v. United States*, 360 U.S. 1, 10 (1959). And "inordinate speed" in resolving criminal matters may raise constitutional harms just as significant as "inordinate delay." *Id*. For example, if the Court were to set a trial date for next week or even next month, that expedited timeline (set with little forewarning) could make it harder for Mr. Gaffney to prepare his defense and would put unnecessary pressure on the Court to speedily

analyze his suppression motion—on which his arguments in defense necessarily depend. That expedited timeline also would not change the fact that Mr. Gaffney's trial has still been unnecessarily delayed through no fault of his own while he has been confined in the D.C. Jail.

It is for this reason that courts retain the "inherent power . . . to dismiss a case for want of prosecution." Advisory Committee Note (1944), Fed. R. Crim. P. 48. Rather than face perverse incentives to rush trials—with the lingering knowledge that any prejudice from the court's delays, much like a prosecutor's, "must rest with the government rather than with the defendant," *Barker*, 407 U.S. at 531, Rule 48(b) permits the court to dismiss an indictment for "unnecessary delay" before the court is placed in such a perplexing position. Otherwise, a "requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself." *United States v. Ewell*, 383 U.S. 116, 120 (1966).

Ultimately, "the burden is on the Government . . . to bring a case to trial" and to prevent unnecessary delays in the process. *Dunn*, 459 F.2d at 1120 (citation omitted). Congress has set rigid timelines in the Speedy Trial Act to "give effect to the sixth amendment right," *MacDonald*, 456 U.S. at 7 n.7 (quoting S. Rep. No. 93–1021, at 1 (1974)), provide prosecutors with clarity, and lessen the need for judicial intervention, *compare Dunn*, 459 F.2d at 1125 (Opinion of Tamm, J.) (suggesting strict time limits should be provided, as Congress ultimately did, so courts need not judge a prosecutor's course of action in every case), *with id.* at 1125–26 (Danaher, J., concurring in judgment) (suggesting *ad hoc* approach of Rule 48(b) is better because individual circumstances such as when "the defendant has been incarcerated awaiting trial" deserve special consideration). In the District of Columbia, the Government has the unique ability to bypass the statutory time limits otherwise governing federal prosecutions by transferring cases between local and federal court. *See, e.g.*, 18 U.S.C. § 3161(b). But this does not mean that the Court must shirk its duties to

supervise the pace of trial and guard the defendant's liberty. Fed. R. Crim. P. 48(b); *see also* Fed. R. Crim. P. 46(h)(1) ("To eliminate unnecessary detention, the court must supervise the detention within the district of any defendants awaiting trial[.]"). When delay results from the discretionary choices of the U.S. Attorney, the Government must be prepared to explain those choices and ensure that the rights of the accused do not suffer. When the prosecutor fails to set out expeditiously in presenting a charge or bringing a case to trial, both public justice and the rights of the accused are gravely harmed. Rule 48(b) dismissal is one of the tools courts may use to address this harm.

The Government's arguments to the contrary are unavailing. First, the Government argues that, although the Rule permits dismissal at a standard lower than the Sixth Amendment, no court in this District has done that in nearly "60 years." Gov't Supp. 5. Assuming this is true, it is primarily because the Speedy Trial Act has "mooted much litigation" about this issue since it was passed in 1974. *Betterman*, 578 U.S. at 445 (quoting *Loud Hawk*, 474 U.S. at 304 n.1). As the Government recognizes, courts are appropriately hesitant to dismiss with prejudice under Rule 48(b) when the time limits in that statute are followed. Gov't. Supp. 4 ("[C]ourts have used proper caution in exercising this extraordinary power where laws and rules specifically designed to prevent pretrial delay . . . do not require dismissal." (cleaned up)). But, here, the U.S. Attorney has engaged in what even Congress recognized to be a loophole to that statute. *See* H.R. Rep. No. 93–1508, *reprinted in* 1974 U.S.C.C.A.N. 7401, 7441. And the D.C. Circuit has noted that, although the statute does not apply in this unique situation, the tools courts used before its passage still apply—namely, the Sixth Amendment and thus, necessarily Rule 48. *Mills*, 964 F.2d at 1193 (noting any other approach "ignores the Sixth Amendment's role").

Second, the Government argues that the period of delay here is too short to justify dismissal. Gov't Supp. 5. In support, the Government cites one case where a Rule 48(b) dismissal

was reversed: *United States v. Simmons*, 536 F.2d 827, 834 (9th Cir. 1976). Gov't Supp. 6. But

that case is immediately distinguishable because during the relevant delay period the defendant

"was at liberty on his personal recognizance," so the court held that there was "minimal prejudice."

*Id.* at 832. Critically, that case did not establish a rule that a delay could be too short to justify

dismissal under Rule 48(b). *Id.* at 834.[20] Indeed, contrary to the Government's assertion, at least

one court has dismissed under Rule 48(b) for a 2.5-month delay that it found was unjustified. *See*

*United States v. Armco Steel Corp.*, 252 F. Supp. 364, 372 (S.D. Cal. 1966) (holding prior Rule

48(b) dismissal for 2.5-month delay collaterally estopped trial on other count). The bright line rule

the Government prefers simply does not exist.

---

[20] The Ninth Circuit also rejected the argument "that unless there has been a Sixth Amendment violation, dismissal under Rule 48(b) must be without prejudice." *Simmons*, 536 F.2d at 832–33. But the court established a rule in that Circuit that although a short delay may warrant dismissal with prejudice, the Government should be forewarned of this consequence. *Id.* at 836; Gov't Supp. 4–5 (recognizing "at least one Circuit" follows the rule). Because the delay there preceded the Speedy Trial Act or any local rule requiring dismissal with prejudice, the court reversed the dismissal, reasoning that the Government had no way of knowing the acceptable time limit to indict the case. *Simmons*, 536 F.2d at 836–38. The Court is not persuaded that *Simmons* should dictate the result in this case. The D.C. Circuit has never adopted such a rule. In fact, it has remanded cases involving no forewarning because of the failure to consider Rule 48(b). *See Hanrahan*, 348 F.2d at 368. And the Court finds the rationale in *Simmons* unconvincing. It is unclear how the interpretation of a Rule formulated in 1944 would depend on having notice from a statute passed in 1974 or a local rule (when the Federal Rule does not mandate one be promulgated on the subject). *See* Advisory Committee Note (1944), Fed. R. Crim. P. 48.

But even accepting the *Simmons* reasoning, it makes little sense in this case. Today, there are various statutes providing "constructive" forewarning to the Government of the length of a reasonable delay. *See United States v. Henry*, 815 F. Supp. 325, 327 (D. Ariz. 1993). Indeed, the Government admits that it took twice as long to obtain an indictment in this case than the Speedy Trial Act permits. Mor Hrg Tr. at 18:1–3. And the Court does not understand what forewarning the Government expected from this Court when the Government chose to transfer the case with little notice when it was pending before a different judge in a different court.

## 2.    Dismissal with Prejudice

Finding that dismissal is the appropriate remedy, the Court must next decide whether to dismiss the indictment with prejudice. Borrowing from Supreme Court precedent in analogous contexts, the Court concludes that dismissal with prejudice is warranted on this record.

The Court recognizes that the remedy of dismissal with prejudice feels, at times, "unsatisfactorily severe" because the consequence is that a charged individual will bet let free without trial. *Barker*, 407 U.S. at 522. But a speedy trial is a necessary "measure protecting the presumptively innocent"—a presumption that "lies at the foundation of the administration of our criminal law." *Betterman*, 578 U.S. at 442. Because "our system of the administration of justice suffers when any accused is treated unfairly," the judiciary must be especially vigilant to ensure that those who have not been convicted at trial are entitled to the safeguards and protections the law affords. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see Barker*, 407 U.S. at 522 (drawing comparisons to the exclusionary rule or a reversal for a new trial). And "[d]ismissal with prejudice [] sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." *Hensley*, 2024 WL 3673612, at *11. The protection's "teeth come from threatening the sovereign—that is, the Federal Government" through a judicial remedy that will assuredly engender "deterrence." *Homaune*, 898 F. Supp. 2d at 167 (discussing analogous statutory protections). Rule 48(b) simply serves as a "restatement" of this obligation—which courts are duty-bound to enforce. Advisory Committee Note (1944), Fed. R. Crim. P. 48.

During a period of incarceration, post-arrest delay "may disrupt [a defendant's] employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Marion*, 404 U.S. at 320. When that delay

is unnecessarily prolonged, the Court seeks to remedy the "emotional stress that can be presumed to result in the ordinary person from [the continued] uncertainties in the prospect of facing public trial." *Strunk*, 412 U.S. at 439. For this reason, the "sole remedy for a violation of the [constitutional] speedy trial right" is "dismissal of the charges" with prejudice. *Betterman*, 578 U.S. at 444–45. As the Supreme Court has explained:

> We have not read the Speedy Trial Clause, however, to call for a flexible or tailored remedy. Instead, we have held that violation of the right demands termination of the prosecution.

*Id.* at 445 n.6.

> Similarly, under the federal Speedy Trial Act:

> [W]hen an indictment is dismissed on motion of the Government, and the defendant is thereafter reindicted, both the 30-day and 70-day periods continue to run from the first indictment, with the proviso that the period during which no indictment is outstanding is excluded from the 70-day calculation. The difference in treatment protects against governmental circumvention of the speedy-trial guarantee.

*United States v. Rojas-Contreras*, 474 U.S. 231, 239 (1985) (Blackmun, J., concurring in judgment) (citation omitted). Although the federal Speedy Trial Act leaves the decision to dismiss with or without prejudice in "the guided discretion of the district court," *United States v. Taylor*, 487 U.S. 326, 335 (1988); 18 U.S. Code § 3162(a)(1) (providing factors to consider), the statute's remedy in this context (strict time limits) still prevents any future indictment and (importantly) renewed pretrial incarceration for that offense. 18 U.S.C. § 3162(h)(5) (if the Government moves to dismiss, the clock still runs and encompasses a future "charge [] filed against the defendant for the same offense, or any offense required to be joined with that offense").

This jurisprudence reflects the considered judgment of the Supreme Court that courts should fashion a remedy to address the prejudice the defendant has suffered—when the other considerations, *e.g. Barker* factors, cannot justify such prejudice. Even when delay does not

amount to a constitutional deprivation, the Court's remedy under Rule 48(b) must similarly address unjustifiable prejudice. *See Hanrahan*, 348 F.2d at 368; *Brown*, 520 F.2d at 1112.

Accordingly, the Court dismisses this case with prejudice. Mr. Gaffney's "prejudice may be spelled out from restraint on liberty for an unreasonable period of time before trial." *Mathies*, 374 F.2d at 315 (discussing prejudice under Rule 48(b)). Dismissal with prejudice is thus a warranted remedy for the Government's "unnecessary delay"—which has needlessly extended the substantial harms Mr. Gaffney has suffered from prolonged pretrial detention. Fed. R. Crim. P. 48(b); *see Hanrahan*, 348 F.2d at 368. Time spent unjustly behind bars is lost forever and the lingering anxiety and fear of continued confinement only compounds that harm. Public justice requires no lesser remedy in the peculiar circumstances presented here. Otherwise, the Government may simply obtain another indictment charging Mr. Gaffney with the same crime in the same court and compound the prejudice from his continued pretrial detention. That result would run counter to the Court's obligation to exercise vigilance and avoid "undue and oppressive incarceration prior to trial." *Betterman*, 578 U.S. at 442 (citation omitted).[21]

---

[21] Because dismissal under Rule 48(b)(1) is appropriate, the Court does not address whether the Government's delay unnecessarily delayed or prejudiced a speedy trial under Rule 48(b)(3).

**CONCLUSION**

For the foregoing reasons, the Court adopts the Report and Recommendation, ECF No. 16, in part, and dismisses the indictment with prejudice under Federal Rule of Criminal Procedure 48(b)(1).

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:    November 7, 2025